See also 961 F.2d 368.

UNITED STATES of America, Appellee,

v.

Angelo PACCIONE, Anthony Y. Vulpis, Fred E. Weiss, W & W Properties, August Recycling, Inc., National Carting, Inc., Stage Carting, Inc., New York Environmental Contractors, Inc., Rosedale Carting, Inc., Vulpis Brothers, Ltd., John McDonald, Defendants,

Michael Vulpis, Appellant.

Nos. 1075, 1076, Dockets
91–6208, 91–1736.

United States Court of Appeals,
Second Circuit.

Argued March 5, 1992.

Decided May 5, 1992.

Robert F. Katzberg, New York City (Mayo Schreiber, Jr., Kaplan & Katzberg, of counsel), for appellant.

Jeffrey B. Sklaroff, Asst. U.S. Atty., New York City (Otto G. Obermaier, U.S. Atty., S.D.N.Y., Mark R. Hellerer, Asst. U.S. Atty., of counsel), for appellee.

Before PIERCE, ALTIMARI, Circuit Judges, and SWEET, District Judge.*

PIERCE, Circuit Judge:

Michael Vulpis appeals from an order finding him in civil contempt for violating various orders of the district court and from a separate judgment of conviction for criminal contempt, in violation of 18 U.S.C. § 401 (1988), entered in the United States District Court for the Southern District of New York, Constance Baker Motley, *Judge.*

Michael Vulpis contends that there was insufficient evidence to support either the order finding him in civil contempt or the judgment of criminal contempt. For the reasons discussed below, we dismiss the appeal from the civil contempt order on the ground of mootness and affirm the judgment of criminal contempt.

* The Honorable Robert W. Sweet, United States District Judge for the Southern District of New York, sitting by designation.

## BACKGROUND

The contempt proceedings against Michael Vulpis are related to criminal prosecutions for mail fraud and violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968 (1988), of four individual defendants and eight partnership and corporate defendants named in a superseding indictment in *United States v. Paccione,* SSS 89 Cr. 446 (CBM). Among the defendants in *Paccione* were Michael Vulpis' son, Anthony Y. Vulpis, and Rosedale Carting, Inc. ("Rosedale"), a waste removal company that Michael Vulpis co-founded in 1954, and owned by him until late 1986. In late 1986, Rosedale agreed to purchase Michael Vulpis' shares of stock in the company and he became a creditor of Rosedale. Michael Vulpis' sons Anthony Y. Vulpis and Dominick Vulpis were the co-owners of record of Rosedale when the initial *Paccione* indictment was filed.

Prior to the unsealing of the initial *Paccione* indictment, the government made an application for a restraining order pursuant to 18 U.S.C. § 1963. On June 14, 1989, the application was granted by a judge of the Southern District of New York and a restraining order was filed that same day. The post-indictment restraining order prohibited Angelo Paccione, Anthony Y. Vulpis, Fred E. Weiss and the partnership and corporate defendants that they owned or controlled, including Rosedale, and "[a]ll attorneys and other persons acting for or in concert with the above-named defendants having actual knowledge of this Order" from taking any action prohibited by the order. The order prohibited, *inter alia,* transferring, selling, or assigning the assets of the individual RICO defendants, and the partnership and corporate RICO defendants, without prior approval of the district court. Subsequently, Judge Motley granted an *ex parte* motion by the government to amend the restraining order.

This *ex parte* amended post-indictment restraining order ("Amended Restraining

Order") was issued pursuant to 18 U.S.C. § 1963(d)(1)(A). It was signed on September 21, 1989 and filed the next day. It prohibited certain actions without the specific prior approval of the district court, sought after written notice was provided to the United States. The Amended Restraining Order barred the individual RICO defendants, and the partnership and corporate RICO defendants in *Paccione*, including Rosedale, "and other persons acting for or in concert with [them, who had] actual knowledge of this Order" from taking any action prohibited by the order. The Amended Restraining Order prohibited transferring, selling, assigning, pledging, hypothecating, encumbering, dissipating or moving in any manner, or causing such action with respect to any property or interest owned or held by any of the partnership and corporate RICO defendants, except for expenditures made by employees or officers of the partnership and corporate RICO defendants in the ordinary course of business.

The *Paccione* case subsequently proceeded to trial and while the jury was deliberating, the government, the individual RICO defendants and the attorneys for each of the individual RICO defendants and the partnership and corporate RICO defendants presented to the district court a letter agreement dated June 6, 1990. In this letter agreement, the individual RICO defendants and the partnership and corporate RICO defendants agreed to be jointly and severally liable to the government and to forfeit $22 million to the government in satisfaction of fines, forfeiture penalties and restitution should the jury return guilty verdicts on the RICO counts. The sum was to be paid in full within 90 days of the signing of the letter agreement; the letter agreement contemplated the sale of the assets of the partnership and corporate RICO defendants, including Rosedale, and it prohibited the sale of any interest or asset of these defendants or any encumbrance of the partnership and corporate RICO defendants, unless prior written approval of the government was obtained. The letter agreement provided, "The [Amended] Restraining Order signed by this Court on September 21, 1989 shall remain in effect until such time as the Government has received payment in full as provided for in this agreement." The letter agreement also provided for the district court to appoint a trustee to monitor the operation of the partnership and corporate RICO defendants until the $22 million was paid.

On June 8, 1990, the jury returned guilty verdicts against, *inter alia*, Rosedale and Anthony Y. Vulpis on the RICO counts and on some of the mail fraud counts.[1] After the jury returned the verdicts, Judge Motley "so ordered" the June 6, 1990 letter agreement, as contemplated by the remaining signatories thereto, and it was filed in the district court ("Forfeiture Consent Order") that same day. During the time the *Paccione* trial occurred, the appellant, Michael Vulpis, was serving as a state court-appointed receiver of Rosedale as a result of an earlier separate dispute concerning the operation of Rosedale, which arose between his sons Anthony Y. Vulpis and Dominick Vulpis, the co-owners of Rosedale. Michael Vulpis was Rosedale's receiver when the jury returned the guilty verdict against Rosedale, and so he signed the Forfeiture Consent Order on behalf of Rosedale. At the time he signed the Forfeiture Consent Order, Michael Vulpis told Judge Motley that he had reviewed its terms, had received the advice of counsel and was signing the agreement knowingly and voluntarily.

On June 19, 1990, Judge Motley appointed Barrington D. Parker, Jr., Esq., as trustee, to oversee the management and operation of Stage Carting, Inc., August Recycling, Inc., National Carting, Inc., Rosedale Carting, Inc. and Vulpis Brothers, Ltd., and to prevent the dissipation of their assets.

---

1. This court subsequently affirmed the judgments of conviction of the individual RICO defendants, Angelo Paccione and Anthony Y. Vulpis. The judgments of conviction of the partnership and corporate RICO defendants, A & A Land Development, Stage Carting, Inc., August Recycling, Inc., National Carting, Inc., Rosedale Carting, Inc. and Vulpis Brothers, Ltd., were also affirmed. *United States v. Paccione*, 949 F.2d 1183, 1191 (2d Cir.1991).

Thereafter, a dispute arose between Michael Vulpis, Trustee Parker and Ditmas Recycling Center, Inc., regarding Rosedale's ownership of certain property. As a result of this dispute, on April 12, 1991, Michael Vulpis resigned as the state court-appointed receiver of Rosedale as part of a settlement agreement with Trustee Parker and Louis D'Angelo, who had been appointed chief executive officer of Rosedale by the district court. In the settlement agreement, Michael Vulpis agreed

> fully to cooperate with the Trustee, the United States of America and its representatives (the "U.S.") in the preservation of the assets of Rosedale and in the disposition of such assets of Rosedale in order to satisfy the fine agreed to by the parties in the Paccione Case and all other sums due to the U.S.

He also agreed "to take no steps to impair the assets of Rosedale or to interfere with the business operations of Rosedale." As part of the April 12th settlement agreement, Michael Vulpis agreed to serve as a consultant and he was to be compensated for any consulting services he might perform at the request of the United States with respect to Rosedale.

Three months later, Trustee Parker discharged Michael Vulpis as a consultant, upon concluding that Vulpis had become obstreperous and was interfering with D'Angelo's role as chief executive officer. Upon learning of his discharge, Michael Vulpis stated to D'Angelo, "You have not seen the last of me. You don't know what I'm going to do." The next month, on August 5, 1991, D'Angelo learned that trucks assigned to serve Rosedale's customers on Routes 103 and 114 had not gone out on those routes and had not serviced those customers, and that the Rosedale employees assigned to work those routes had left Rosedale's employ and begun to work for two other private carting companies:

DV Carting, a company owned by Michael Vulpis' brother, Daniel Vulpis; and Dynamic Carting, a company in which Michael Vulpis' long-time friend, Anthony Piccolo, has a financial interest.

In response to an application by the government, Judge Motley, on August 9, 1991, issued an order to show cause and a cease and desist order pursuant to 18 U.S.C. § 1963(e).[2] The order to show cause order required, *inter alia*, the named individuals and entities to appear on August 16, 1991 and show cause why an order should not be made requiring them, and all persons acting in concert with them or having notice of the order, to immediately cease and desist from violating the Amended Restraining Order and interfering with Rosedale's business interests and properties. The cease and desist order, *inter alia*, directed Michael Vulpis to provide a written statement under oath, within one business day of the service of the order, identifying any customers serviced in July 1991 by Rosedale, who had been contacted about service or payment between August 1 and the date of the list, and to state whether any monies were collected from any such customers, and if so, from whom, how much and on what date. Michael Vulpis was ordered also to "forthwith return to Rosedale any property, funds, or interests of Rosedale in his possession or control including, but not limited to, trucks, monies collected, customer lists, routes, or containers." Vulpis was ordered to appear before the district court on August 16, 1991 and show cause why he should not be held in civil contempt of the court.

On August 16 and 17, 1991, appellant appeared, with counsel, and a civil contempt hearing was held only as to him. During the hearing, the government elicited from D'Angelo, the court-appointed chief executive officer of Rosedale, testi-

---

**2.** The cease and desist order was directed towards twelve individuals and ten companies. The individuals named in the order were: appellant Michael Vulpis, Daniel Vulpis, Sr., Dominick Vulpis (of Rosedale), Dominick Vulpis (of Canarsie Carting), Anthony Piccolo, Nick Porcaro, Philip Costa, Andrew de Carlo, Christopher McDermott, Richard Ruszkowski, Charles

Thompson and Armand Barone. The companies named were: DV Carting, Inc., Canarsie Carting, Inc. a/k/a A. Vulpis Carting Corp., B.J. Piccolo Private Sanitation, Piccolo Private Sanitation # 3, Park Rubbish Removal Inc., Piccolo Private Sanitation # 4, C. Ring for Rubbish, A. Buono Carting, Dynamic Carting and Mill Stream Construction Corp.

mony concerning the above-quoted statement that Michael Vulpis made upon learning of his discharge as a consultant to Rosedale. The government also elicited from D'Angelo testimony concerning his learning on August 5, 1991 of Rosedale's failure to service its customers on Routes 103 and 114.

Apropos the failure to service the customers on Routes 103 and 114, D'Angelo testified that if the revenues from these routes were lost it could lead to the demise of Rosedale. In addition, a bookkeeper for Rosedale testified that she had been told by Christopher McDermott, a Rosedale employee, that Michael Vulpis had directed him to report to work for DV Carting, where McDermott was to collect waste from Rosedale's customers.[3] An agent of the Federal Bureau of Investigation ("FBI") testified that during the course of his investigation involving DV Carting and Dynamic Carting, he interviewed Charles Thompson, a former Rosedale employee. According to the FBI agent, Thompson stated that Piccolo, an individual with a financial interest in Dynamic Carting and Michael Vulpis' long-time friend, had told Thompson that Rosedale no longer had the routes that Thompson formerly serviced, but that Thompson could work for Dynamic Carting, and still collect garbage on those same routes. Also, six of Rosedale's customers testified that persons whom they recognized as former Rosedale employees and bill collectors had told them that DV Carting or Dynamic Carting was now collecting the customers' garbage and after collecting fees from the customers, the former Rosedale employees and bill collectors gave them receipts from DV Carting and Dynamic Carting. According to D'Angelo, as a result of these actions, Rosedale lost approximately $50,000 from July 31 through August 9, 1991. Five of Rosedale's customers testified that, although they had not agreed to a new arrangement, decals evidencing Rosedale as the service provider had been replaced with decals of two other carting companies, namely DV Carting and Dynamic Carting.

An inspector from the New York City Department of Consumer Affairs testified that several of Rosedale's trash containers that were located on the premises of the Brooklyn Terminal Market, where Rosedale had customers, had been re-painted and bore the name of DV Carting.

When called by the government on its direct case, Michael Vulpis invoked his fifth amendment privilege against self-incrimination and refused to testify. The government also called former Rosedale employee Christopher McDermott, who was one of the persons named in the cease and desist order, as a witness in the proceeding against Michael Vulpis. After responding to a few questions, McDermott invoked his fifth amendment privilege against self-incrimination and refused to testify further. Vulpis' attorney later argued to Judge Motley that since none of the witnesses had implicated Michael Vulpis in their testimony, Michael Vulpis had not been shown to be connected to the activities in question. Near the end of the civil contempt hearing, Judge Motley directed the government to initiate criminal contempt proceedings against Michael Vulpis.

On August 17, 1991, upon the conclusion of the presentation of evidence at the civil contempt hearing, Judge Motley read her findings and conclusions into the record. She ruled that Michael Vulpis was in contempt of (1) the cease and desist order of August 9, 1991, (2) the Amended Restraining Order of September 21, 1989 and (3) the Forfeiture Consent Order of June 8, 1990. She found "by both direct evidence and circumstantial evidence that Michael Vulpis ha[d] interfered with the operation of Rosedale and [was] responsible for the diversion of funds from Rosedale due it for garbage collections on its Routes 103 and 114." She found him responsible for the diversion of certain Rosedale containers to Dynamic Carting and DV Carting. Also, Vulpis was held in contempt for failing to provide information regarding monies collected by former Rosedale employees, which funds, she stated, properly belonged to Rosedale, and for failing to account for property of

---

**3.** See footnote 4, *infra.*

Rosedale in his possession or under his control, as directed in the August 9, 1991 order.

As a result of her finding that Michael Vulpis was in civil contempt, Judge Motley imposed a fine of $50,000, to be paid to Rosedale within ten days. She instructed Michael Vulpis that if he failed to purge himself of his civil contempt, he would be arrested and confined until he paid the $50,000 fine and furnished the required information, or until the contempt order was discharged.

On August 27, 1991, Michael Vulpis paid the $50,000 fine and provided the information as directed by the district court. He then filed a notice of appeal. Thereafter, the parties submitted the record of the civil contempt proceeding as the record for the non-jury criminal contempt proceeding before Judge Motley. On November 18, 1991, Judge Motley issued a written decision finding Michael Vulpis in criminal contempt, and on December 16, 1991, she sentenced him to 180 days' incarceration and imposed a $50 assessment against him. Michael Vulpis is presently serving his sentence. He now appeals both determinations relating to civil and criminal contempt. The two appeals have been consolidated herein.

## DISCUSSION

Appellant argues that the district court erred in finding him in civil contempt. He claims that there was insufficient evidence to establish that he knew or believed that any district court order limited his conduct with respect to Rosedale during the period in question, and that the government did not prove by clear and convincing evidence that he failed to comply with an order of the district court. He also contends that the government failed to prove all the essential elements of criminal contempt. We dismiss the order of civil contempt as moot and affirm the judgment of conviction for criminal contempt.

### Civil Contempt

■ The district court found Michael Vulpis in civil contempt of its cease and desist order, the Forfeiture Consent Order and the Amended Restraining Order. Upon finding Michael Vulpis in civil contempt, the court instructed him that he could purge himself by both paying the fine and furnishing the information required by the cease and desist order within ten days. Within the designated time period, Michael Vulpis complied and apparently purged himself. We conclude that his appeal from the order finding him in civil contempt is moot, *see United States v. Johnson,* 801 F.2d 597, 600 (2d Cir.1986); *In re Hunt,* 754 F.2d 1290, 1293–94 (5th Cir.1985); *In re Cordova Gonzalez,* 726 F.2d 16, 21 (1st Cir.), *cert. denied,* 466 U.S. 951, 104 S.Ct. 2154, 80 L.Ed.2d 540 (1984), and accordingly this appeal is dismissed.

### Criminal Contempt

■ "Acts of willful disobedience to clear and unambiguous orders of the court constitute contempt of court." *In re Weiss,* 703 F.2d 653, 660 (2d Cir.1983). It is well-established that a court may impose sanctions for criminal contempt only if "it is proven beyond a reasonable doubt that the contemnor willfully violated the specific and definite terms of a court order." *United States v. Twentieth Century Fox Film Corp.,* 882 F.2d 656, 659 (2d Cir.1989), *cert. denied,* 493 U.S. 1021, 110 S.Ct. 722, 107 L.Ed.2d 741 (1990).

■ Ordinarily, the class of parties subject to an injunction or restraining order include the named parties, officers, agents, servants, employees, attorneys of the named parties and successors in interest to the property that is subject to the injunction or restraining order. *See Golden State Bottling Co. v. NLRB,* 414 U.S. 168, 177–80, 94 S.Ct. 414, 421–23, 38 L.Ed.2d 388 (1973); Fed.R.Civ.P. 65(d). Further, in *Alemite Mfg. Corp. v. Staff,* 42 F.2d 832 (2d Cir.1930), Judge Learned Hand wrote: "We agree that a person who knowingly assists a defendant in violating an injunction subjects himself to civil as well as criminal proceedings for contempt. This is well established law." *Id.* at 832 (citations omitted). A court may bind non-parties to the terms of an injunction or restraining order to preserve its ability to

render a judgment in a case over which it has jurisdiction. *See Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 129 n. 6 (2d Cir.1979).

■ The district court had the authority to hold Michael Vulpis in contempt with respect to the Amended Restraining Order, which was filed on September 22, 1989, upon the government's *ex parte* motion, pursuant to 18 U.S.C. § 1963(d)(1)(A). The significance of a restraining order filed pursuant to Title 18 U.S.C. § 1963(d)(1)(A) was addressed in *United States v. Regan*, 858 F.2d 115 (2d Cir.1988). In *Regan*, this court determined that such orders were distinguishable from general restraining orders, in that, orders under § 1963(d)(1)(A) are designed only to preserve property for forfeiture following a RICO conviction, and thus they closely resemble remedies such as garnishment or attachment, which may be directed routinely at third-parties, who have no interest in the merits of the underlying litigation. *Id.* at 120. This court concluded that in appropriate circumstances—where restraints against indicted RICO defendants are insufficient to preserve potentially forfeitable property—an order, pursuant to § 1963(d)(1)(A), which is directed to unindicted third-parties, may be entered to preserve the availability of potentially forfeitable assets after a RICO conviction. *Regan*, 858 F.2d at 120–21. *Regan* acknowledged that Fed.R.Civ.P. 65(d), *Alemite* and *Heyman v. Kline*, 444 F.2d 65 (2d Cir.1971), advance the proposition that a court generally may not issue an order against a non-party. However, we note that neither *Alemite* nor *Heyman* dealt with a person who interfered with the *res*, the disposition of which the district court had specifically restricted, and who consciously impeded the rights, obligations and efforts of the parties bound by the court's order from attempting to comply with valid court orders. *Regan* dealt only with the possibility of such an impediment.

Nonetheless, our assessment that the district court had the authority to enter an order explicitly directed to Michael Vulpis does not resolve this case. We must consider whether Michael Vulpis who was not named in the district court's orders, with the exception of the August 9, 1991 cease and desist order, and who was not a defendant in the *Paccione* prosecution, could nevertheless be found in contempt of the district court's earlier orders.

Although holding a person who is not a party to a lawsuit nor named in the court's orders in contempt of an order issued in the suit can present a substantial issue of due process, we believe that, on the facts of this case, Michael Vulpis was bound by the district court's orders. Prior to signing the Forfeiture Consent Order, which referred to the Amended Restraining Order continuing in effect until the government received full payment for the fines, forfeiture penalties and restitution arising out of the RICO convictions, Michael Vulpis had notice of its terms. A colloquy between the prosecutor and Michael Vulpis, who was present with his attorney, transpired before Judge Motley, under seal, on June 6, 1990 regarding additional understandings of certain non-defendant, interested parties to the letter agreement signed that day; this letter agreement later became the Forfeiture Consent Order. At the August 17, 1991 contempt proceeding, the prosecutor read the following from this previously sealed record:

> Prior to signing the agreement today, Dominic[k] Vulpis, a 50–percent owner of Rosedale, and Michael Vulpis, the state court-appointed [receiver] of Rosedale and also the major creditor of Rosedale, have had the opportunity to review the agreement and the affidavits of confessions of judgment which they signed. Dominic[k] Vulpis and Michael Vulpis each separately reviewed and discussed the agreement and the affidavits of confession of judgment with their own separate independent counsel.... Each, both Michael Vulpis and Dominic[k] Vulpis, fully understands the terms of the agreement and the affidavits of the confession of judgment, and each has signed the agreement and the affidavits of confession of judgment knowingly and voluntarily.
>
> Finally, your Honor, just so the record is absolutely clear, by signing the agree-

ment and the affidavits of confessions of judgment, if Rosedale is convicted of a RICO counts, [sic] the following rights, among others, are being waived by Rosedale, by Dominic[k] Vulpis, and Michael Vulpis, both individually and as the [receiver] of Rosedale, those are as follows:

First, there will not be a separate forfeiture phase of this case....

Second, neither Rosedale nor Dominic[k] Vulpis, nor Michael Vulpis, nor Anthony Vulpis, or their attorneys may seek remission or forgiveness of all or part of the forfeiture amount provided for in the agreement, and the confession of judgment....

Finally, your Honor, it is a specific and express intent of this agreement that Michael Vulpis and Dominic[k] Vulpis are giving up and waiving all such rights. I would just ask for Dominic[k] Vulpis and Michael Vulpis's assent on the record as to those terms and conditions.

And then Michael Vulpis, stated, yes, I consent to them.

We conclude upon all the facts and circumstances presented herein that there is clear reason to believe Michael Vulpis had sufficient notice of the district court's several orders pertaining to Rosedale, and that it was proper for the court to hold him to the terms of those orders.

In *United States v. Hall,* 472 F.2d 261 (5th Cir.1972), a district court, pursuant to its jurisdiction to effectuate a judgment in a school desegregation suit, issued an order prohibiting all students "and other persons" from engaging in certain actions and provided that "anyone having notice" of the order could be subject to criminal contempt. One Eric Hall was found to have had notice of the order. Hall was not a party to the school desegregation suit and was not named as a party in the order, however he engaged in conduct that was prohibited by the order. The district court found that Hall had violated the court's order and held him in criminal contempt. The court of appeals affirmed despite the lack of a statute conferring express authority upon the district court to issue the order. It held that the "willful violation of

[the district court's] order by one having notice of it constitutes criminal contempt." *Id.* at 268.

Herein, the Amended Restraining Order and the Forfeiture Consent Order directed that Rosedale's assets not be dissipated. Therefore, Michael Vulpis, found by the court to be a person with notice of the terms of the court's orders, placed himself at risk of being held in contempt if he undertook to thwart the district court's efforts to enforce its judgments and orders. *See id.* at 264–68. Indeed, the district court in this case was not required to and did not close its eyes either to the opportunity or the actions of Michael Vulpis relating to the dissipation of the forfeited assets. *See Regan,* 858 F.2d at 120–21.

Michael Vulpis argues that the government did not prove all the elements of criminal contempt. We disagree. A reasonable trier of fact could have concluded that the evidence presented during the civil contempt hearing, which was the basis of the district court's finding of criminal contempt, established beyond a reasonable doubt that Michael Vulpis had knowingly and willfully violated the district court's orders. The district court found that

Michael Vulpis, along with his longtime friend Anthony Piccolo and his brother Daniel Vulpis, attempted to divert Rosedale accounts from two customer routes by directing former employees of Rosedale to lie to customers about Rosedale's status as a going concern, to deny customers any choice in selecting a new carting company and to remove Rosedale decals from business establishments without the permission of the owners.

■ Judge Motley relied upon her findings in the civil contempt proceeding as evidence of Vulpis' wilful violation of her orders. In her civil contempt decision, she found that in his roles vis-à-vis Rosedale, he had access to Rosedale's customer lists, route information and financial records. Further, based upon the testimony of Rosedale's bookkeeper, the district judge had an evidentiary basis upon which to determine that Michael Vulpis was linked to the plan to divert Rosedale's customers, and that his

instruction to McDermott to report to work at DV Carting but to collect waste from Rosedale's customers, demonstrated that he willfully violated the court's orders.[4] As discussed above, there was testimony that, when his services as a consultant to Rosedale were terminated, Michael Vulpis stated, to Rosedale's chief executive officer, "You have not seen the last of me. You don't know what I'm going to do." In the full context of the facts herein, this comment could be construed by a fact-finder to have been intimidating, it having occurred a short time before the conduct at issue began. This was further evidence from which the district judge could have drawn a reasonable inference that Michael Vulpis was directly linked to the dissipation of assets conduct that occurred a short while later. In sum, there was a sufficient evidentiary basis to warrant a finding that criminal contempt had been established beyond a reasonable doubt.

## CONCLUSION

For the foregoing reasons, the appeal from the district court's order of civil contempt is dismissed as moot and the judgment of conviction of criminal contempt is affirmed.

SWEET, District Judge, dissenting:

I respectfully dissent from the majority's affirmance of the criminal contempt. As I read the orders at issue, I conclude that Vulpis was not covered by their terms and, as such, was not subject to the restraint against the conduct that gave rise to the finding of contempt.

The Forfeiture Consent Order, signed by Michael Vulpis on behalf of Rosedale Carting, Inc. and Vulpis Brothers, Ltd., forbids the "encumbrance or sale of any asset of the defendant corporations or any encumbrance or sale of the interests of Angelo

Paccione or Anthony Vulpis in the defendant corporations or any sale or encumbrance of any of the defendant corporations themselves" without the prior written approval of the Government. Even assuming that the Forfeiture Consent Order applies to Vulpis in his individual capacity, which it does not, the activities in which he engaged did not violate that order. The majority's characterization of the order's terms as forbidding the *dissipation* of Rosedale's assets does not square with the actual language of the order, quoted above. While the record establishes that Vulpis acted to dissipate Rosedale's assets, there is no allegation that he sold or encumbered any of the assets or interests subject to the Forfeiture Consent Order.

The Amended Restraining Order, which applies to "[a]ll attorneys and other persons acting for or in concert with the above-named defendants[1] having actual knowledge of this Order," does prohibit the dissipation of any property or interests owned or held by the defendants in the criminal suit, including Rosedale. The majority has sought to establish the authority of the district court to bind Vulpis, a non-defendant third party. However, as I see it, that authority is neither controversial nor at issue here. It is quite well established that a court may issue a restraint against non-parties with actual notice of the terms of the restraint where a *res* over which the court has jurisdiction might be disturbed by the actions of non-parties or where the restraint is necessary to preserve the court's ability to render a judgment in a case over which it has jurisdiction. *See United States v. Regan,* 858 F.2d 115, 120 (2d Cir.1988); *Vuitton et Fils S.A. v. Carousel Handbags,* 592 F.2d 126, 129 n. 6 (2d Cir.1979); *cf. United States v. Hall,* 472 F.2d 261, 265–66, 268 (5th Cir.1972).

---

4. After the government proposed to call McDermott to testify in the criminal contempt proceedings, Michael Vulpis withdrew any hearsay objection to the bookkeeper's testimony for the criminal proceeding and withdrew any such objection to this testimony should there be an appeal.

1. The defendants named in the Amended Restraining Order are Angelo Paccione, Anthony Vulpis, John McDonald, A & A Land Development, W & W Properties, August Recycling, Inc., National Carting Inc., Stage Carting Inc., New York Environmental Contractors, Inc., Rosedale Carting, Inc., Vulpis Brothers, Ltd. and All County Sanitation, Inc.

Thus, while I in no wise question the district court's *authority* or *power* to restrain a third party like Vulpis under the circumstances present in this case, Judge Motley did not exercise that authority in the Amended Restraining Order. And, having failed to do so, she erred when she held Vulpis in contempt of that order.

The Amended Restraining Order enjoined the named defendants and those acting for or in concert with the named defendants having actual knowledge of the order. Nevertheless, Vulpis is neither named in the order nor was the district court presented with any proof that he was acting "for or in concert with" any of the named defendants when he engaged in the conduct at issue.[2] This fact distinguishes this case from *Regan* and *Carousel Handbags*, two of the cases cited by the majority. In *Regan*, 858 F.2d at 117–18, the order enjoined the non-party by name. In *Carousel Handbags*, 592 F.2d at 128–29, the order, like the Amended Restraining Order, enjoined "all those acting in concert or participation with" defendant Carousel. Applying this language, the court held that the non-party may be held in contempt only if the plaintiff established that he had actual knowledge of the consent decree and acted in concert with Carousel. Finally, this case is also distinguishable from *Hall*, where a non-party was held in contempt even though he was not acting in concert with those named in the order. In contrast to the Amended Restraining Order, the order in *Hall* by its terms applied to "persons acting *independently* or in concert with [students of Ribault High School] and having notice of this order." 472 F.2d at 263 (emphasis added).

The majority focuses intently on Vulpis's awareness of the orders. However, actual notice is only half of the equation necessary to result in application of the Amended Restraining Order. Absent proof that Vulpis was acting for or in concert with the

named defendants, therefore, his awareness of the orders does not bring him within their ambit.

Both the district court and the majority have accepted the inference that Vulpis must have been behind the "campaign of intimidation" waged against Rosedale. Notwithstanding, the finding that Vulpis is in contempt of the court orders should be reversed because the orders do not apply to him.

---

2. Vulpis did act on behalf of DV Carting, owned by Daniel Vulpis, his brother, and Dynamic Carting, owned by Anthony Piccolo, a friend. Neither these individuals nor their companies are named in the Amended Restraining Order. Moreover, because the allegedly contemptuous conduct occurred after Vulpis was terminated as consultant to Rosedale, Vulpis cannot be said to have been acting as "Rosedale Carting, Inc." for purposes of the Restraining Order's applicability.