191 F.3d 297 (2nd Cir. 1999)
 DOCTOR'S ASSOCIATES, INC., Plaintiff-Appellee,
v.
REINERT & DUREE, P.C., DAVID M. DUREE, WILLIAM HARGETT, MARY HARGETT, RICHARD BELLON, DANIEL WOLF, PATRICIA BATCHMAN, BARBARA WINGO, PAMELA DUTTON BAKER, TONY MAJCHER, LAURENT BASSE, FLORENCE BASSE, ANUPAL CHEEMA, RAKESH BHATNAGAR, BIPIN DESARI, DENNIS DUVAL, KATHLEEN DUVAL, SRIDHAR DRONAVALLI, JIM HOBSON, WILLIAM HAFEY HYLE, GEORGE MEDINA, LEE MILLER, SONJA MILLER, JEFF MOE, KYONG SUN MUN, RUTH REED, PHIL REED, NANAK SINGH, LORITA WHITNEY, JOHN F. DEE, CAROL J. DEE, DAN KEATING, KEVIN BOOK, TIM CZARKOWSKI, CARY CZARKOWSKI, KATHY NICHOLAS, SAYED QASIM, CHERYL LENART, CHARLES DIPRIMA, STEVEN DIPRIMA, THOMAS P. VERRI, ROBERT LEONARD, MICHAEL LEONARD, ANASTASIOS KALLOPOULOS, JAGJIT S. SAHOTA, HARMINDER KALIRAI, SUMAN GREWAL, HOWARD BREZNER, ROCHELLE BREZNER, DAVID T. LATIMER, LESTER C. BOWERS, JUDITH A. BOWERS, DENNIS DESPAIN, TERRY DESPAIN, TIM SPOHR, CHERYL E. SPOHR, MICHAEL BENES, CHARLES MANSFIELD SMITH, III and MATTHEW SMITH, Movants-Appellants,
DAVID HOLLINGSWORTH, JACK ARKIS, D. LINNETTE BONHOTEL, EARL CHILDERS, KEITH CHILDERS, GEORGE COOKSEY, JANE COOKSEY, JEFFREY FARR, PAMELA FARR, RODRIGO GONZALEZ, MARIA GONZALEZ, ROBERT HODER, JACQUELYN HODER, PREET KIRAN JOHAL, EDWARD MADGETT, PAMELA
MADGETT, WILLIAM MCCUSKER, MARIE MCCUSKER, ASHOK PATEL, RITA PATEL, CRAIG SIPIORA, NANCY SIPIORA, KARL SPIELVOGEL and BRADLEY WESTON, Defendants.
 Docket No. 98-9156
August Term, 1998
 UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
 Argued: May 5, 1999
Decided: August 12, 1999
 
 Appeal from a preliminary injunction entered by the United States District Court for the District of Connecticut (Dorsey, J.) barring nonparty franchisees from litigating specified claims against the franchisor in state court or from being represented by specified attorneys in suits against the franchisor. The Court of Appeals (Leval, J.) vacates the challenged portions of the injunction.
 DAVID M. DUREE, Reinert & Duree, P.C., St. Louis, MO (Nicholas Wocl, Tooher & Wocl, L.L.C., Stamford, CT, On the Brief), for Movants-Appellants.
 EDWARD WOOD DUNHAM, Wiggin & Dana, New Haven, CT, for Plaintiff-Appellee.
 Before: McLAUGHLIN, LEVAL and MICHEL* Circuit Judge.
 LEVAL, Circuit Judge:
 
 
 1
 Fifty-seven franchisees of the Subway sandwich chain, who are not parties to any action in the district court, and their attorneys, David M. Duree and Reinert & Duree ("Duree"), appeal from a preliminary injunction entered upon the motion of the chain's franchisor, Doctor's Associates, Inc. ("DAI"), by the United States District Court for the District of Connecticut (Peter C. Dorsey, Judge). Notwithstanding that the franchisees were not parties, the district court enjoined them from pursuing claims against DAI in state court and from being represented by Duree in actions against DAI. We conclude that the challenged portions of the injunction exceeded the scope of the district court's discretion.
 
 BACKGROUND
 
 2
 This is the tenth time that a dispute between DAI and Subway franchisees represented by Duree has come before this court. In previous suits, the district court has granted the relief sought by DAI, and we have usually affirmed.[1] Although this case shares a factual core with the prior suits, it differs in dispositive respects.
 
 
 3
 Each relevant Subway franchisee and DAI have executed a franchise agreement that requires the parties to arbitrate claims arising under the agreement.[2] Displeased with the relationship, franchisees represented by Duree have repeatedly filed suits against DAI in various state courts. In response, DAI has served these parties with written demands for arbitration, pursuant to the franchise agreement. See, e.g., Distajo II, 107 F.3d at 128, 132; Jabush, 89 F.3d at 110-11.
 
 
 4
 In prior cases, when the franchisees refused to arbitrate, DAI responded by commencing actions to compel arbitration against them in federal district court in Connecticut, pursuant to the Federal Arbitration Act, 9 U.S.C. §4.[3] DAI named its adversaries as parties, and served them with process. See Fed. R. Civ. P. 4. The court had subject-matter jurisdiction under 28 U.S.C. § 1332 because DAI is a citizen of Florida and the franchisees it sued are not. The court had personal jurisdiction over the franchisees because each of them had agreed to arbitrate in Connecticut. See Stuart, 85 F.3d at 979. In response to DAI's actions, the franchisees made an array of arguments, including lack of federal jurisdiction and unenforceability of the arbitration clause on various grounds.
 
 
 5
 In these past cases, the district court compelled arbitration and enjoined the party-defendants who had been served with process from prosecuting their disputes in the state courts. In several instances, the court's injunction was directed not only against the defendant franchisees, but also against "their agents, representatives, attorneys, and any one acting on their behalf." E.g., Distajo, 944 F. Supp. at 1010. Except in a few instances resulting in reversals on res judicata grounds, see Distajo I, 66 F.3d at 458, either the franchisees declined to appeal, or we eventually affirmed the orders compelling arbitration and the injunctions. See, e.g., Distajo II, 107 F.3d at 135-36; Stuart, 85 F.3d at 977, 985.
 
 
 6
 This appeal arises from an order issued by the district court in three consolidated cases - Hollingsworth, Jabush, and Sharma. In Doctor's Assocs., Inc. v. Hollingsworth ("Hollingsworth"), DAI filed a petition to compel arbitration and enjoin state court litigation against 31 Subway franchisees who had filed an as-yet uncertified class action against DAI executives in state court in Madison County, Illinois. See Hollingsworth, 949 F. Supp. at 79-80. The 31 franchisees named in Hollingsworth were residents of states other than Florida. DAI did not name three additional Illinois plaintiffs who were Florida residents, presumably because their inclusion would have destroyed diversity. See id. The district court compelled arbitration and enjoined prosecution of the Illinois action. The injunction was directed against "[d]efendant-franchisees, their agents, attorneys, servants and employees, and all other persons in active concert or participation with them, including the Florida franchisees and any unnamed class action plaintiffs." Id. at 86. We summarily affirmed.
 
 
 7
 In Doctor's Assocs., Inc. v. Jabush ("Jabush"), DAI had previously commenced arbitration of its own claims against ten franchisees. The complaint in the district court petitioned to compel those ten franchisees to participate in that arbitration. In matters consolidated with Jabush, DAI named two franchisees which had sued DAI in a Maryland court, seeking to compel them to arbitrate and to enjoin their Maryland litigation. The district court granted DAI's applications to compel arbitration, and enjoined the Maryland litigation by the two franchisees, their "agents, attorneys, servants and employees, and all other persons in active concert and participation with them."
 
 
 8
 In Doctor's Assocs., Inc. v. Sharma ("Sharma"), DAI petitioned to compel arbitration and enjoin litigation by nine franchisees who had sued DAI in a California court. The court compelled arbitration and enjoined litigation by the franchisees "and/or businesses they own or control."
 
 
 9
 On June 25, 1998, after the injunctions in Hollingsworth, Sharma, and Jabush had been entered, DAI filed a motion to hold Duree in contempt and sanction him because he was representing plaintiffs in two further lawsuits against DAI in Madison County, Illinois. Both these lawsuits purported to be class actions on behalf of all Subway franchisees (with an insignificant exception that is not relevant here). In Hargett v. Doctor's Assocs., Inc. ("Hargett"), thirty-seven of the forty initial party-plaintiffs were also defendants in the Hollingsworth, Jabush, and Sharma suits who had been enjoined from prosecuting those actions. In Wolf v. Doctor's Assocs., Inc. ("Wolf"), all fifty-four party-plaintiffs were litigating against DAI for the first time. Their suit stated some of the same claims made by other franchisees in Hollingsworth.
 
 
 10
 Because of the contempt motion directed at him, Duree moved in Hargett for voluntary dismissal on behalf of the thirty-seven plaintiffs who were also defendants in the Hollingsworth, Jabush, and Sharma federal actions. Once these plaintiffs' claims had been dismissed, none of the remaining plaintiffs in either Wolf or Hargett was a party to any of the three federal court actions.
 
 
 11
 On July 15, 1998 the district court heard the motion for contempt and sanctions in the three federal actions. Judge Dorsey expressed substantial uncertainty as to whether Duree had violated any existing order by litigating the Hargett and Wolf actions. Stating that those actions should be stopped, however, the court instructed counsel for DAI to submit a draft injunction barring the Hargett and Wolf plaintiffs - and apparently also all franchisees - from litigating the claims raised in those suits.
 
 
 12
 On July 20, 1998, DAI submitted a proposed order barring the named plaintiffs in Hargett and Wolf, as well as "unnamed class action plaintiffs," from prosecuting those state court actions or any of the claims asserted in those actions. The proposed order would also have barred franchisees represented by Duree and his firm from suing DAI in connection with the franchise agreements without leave of the court. The proposed order contained a finding that Duree's litigation was "not only vexatious to DAI, but an abuse of the legal system."
 
 
 13
 After the circulation of the draft injunction, on July 21, 1998, the district court entered a series of brief preliminary injunctions, not based on DAI's submission, barring "all named and unnamed class action plaintiffs in the Hollingsworth, Hargett, and Wolf lawsuits currently pending in Madison County [hereinafter collectively the "Madison County lawsuits"] . . . from prosecuting, advancing and/or otherwise participating in [Hargett] and [Wolf] or prosecuting the claims asserted in those lawsuits in other actions." None of the plaintiffs in Hargett or Wolf were parties to the federal actions in which the injunctions were entered.
 
 
 14
 On July 24, 1998, the fifty-seven plaintiff franchisees in Wolf and Hargett, as well as Duree and his firm, "appear[ed] specially" in federal court to object to the proposed preliminary injunction. Among other things, they asserted that the findings of vexatious and abusive litigation were unwarranted; that the injunction violated the Anti-Injunction Act; and that the injunction "exceeds the jurisdiction of [the district court because] it enjoins parties not before this Court." On July 29, the district court entered a revised preliminary injunction against the nonparty franchisees largely in the form that DAI proposed. The court recited as grounds for the injunction the need "to preserve and effectuate the judgments of this Court and the Second Circuit," asserting that the Hollingsworth defendants "were the virtual representatives of the unnamed class members" suing in Hargett and Wolf. In relevant part, the injunction:
 
 
 15
 ORDERED that the defendants [in federal court in Hollingsworth, Sharma, and Jabush,] their agents, attorneys (including David M. Duree, attorneys at Reinert & Duree, or other lawyers working with Mr. Duree), and all other persons in active concert or participation with them, including all named and unnamed class action plaintiffs in the Hollingsworth, Hargett and Wolf lawsuits brought in Madison County, with notice of this order, are enjoined from prosecuting . . . Hargett and Wolf and from prosecuting in any other action (whether now pending or filed in the future) any of the claims asserted in those lawsuits, until further order of this Court;
 
 
 16
 ORDERED that any franchisee represented by Mr. Duree, by Reinert & Duree or by lawyers working in conjunction with Mr. Duree, is barred from commencing or prosecuting litigation against DAI . . . unless the franchisee obtains advance approval from this Court.
 
 
 17
 The court also specified that the order did not apply to franchisees "until they have notice of this order, and are represented by counsel." The court's injunction of July 29 differed from DAI's draft at least in that the court excised DAI's proposed findings that Duree had engaged in vexatious and abusive litigation. Upon issuing the injunction, the court denied DAI's motions for sanctions and contempt. Duree and the fifty-seven franchisees who filed the Hargett and Wolf suits now appeal from the quoted portions of the injunction.
 
 DISCUSSION
 
 18
 1. The Injunction Barring Appellants from Litigating Certain Claims
 
 
 19
 Subject to exceptions, a court's in personam order can bind only persons who have placed themselves or been brought within the court's power. See United States v. Paccione, 964 F.2d 1269, 1275 (2d Cir. 1992) ("[A] court generally may not issue an order against a nonparty."); 11A Charles A. Wright, et al., Federal Practice and Procedure §2956, at 335 (2d ed. 1995) ("A court ordinarily does not have power to issue an order against a person who is not a party and over whom it has not acquired in personam jurisdiction."). In this case, the appellant franchisees were not parties in the district court and were not within the court's in personam jurisdiction. While they were plaintiffs in state court actions, the appellant franchisees had no role in any action before the district court. They had not brought their own federal actions, and they had not been named in actions and served with process by DAI. Therefore, unless this case falls within an exception to the general principle that a court cannot "make a decree which will bind any one but a party," Alemite Mfg. Corp. v. Staff, 42 F.2d 832, 832 (2d Cir. 1930) (L. Hand, J.), the injunctions entered by the district court were improper.
 
 
 20
 In enjoining the non-party franchisees, the district court relied on Rule 65(d) of the Federal Rules of Civil Procedure. In relevant part, the rule provides that an "order granting an injunction . . . is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order." Fed. R. Civ. P. 65(d). Rule 65(d) "is designed to codify the common law doctrine 'that defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding.'" Heyman v. Kline, 444 F.2d 65, 66 (2d Cir. 1971) (quoting Regal Knitwear Co. v. NLRB, 324 U.S. 9, 14 (1945)); see also Paccione, 964 F.2d at 1274 ("'a person who knowingly assists a defendant in violating an injunction subjects himself to [contempt]'" (quoting Alemite, 42 F.2d at 832)). The district court declared that the class of "agents, representatives, [or] persons in active concert or participation" with the federal defendants included "all named and unnamed class action plaintiffs in the [Madison County] lawsuits." The court enjoined all those nonparties from prosecuting "Hargett and Wolf and from prosecuting in any other action . . . any of the claims asserted in those lawsuits."
 
 
 21
 We conclude that the district court's injunction was not authorized by Rule 65(d) because the injunction bars the nonparty appellants from prosecuting lawsuits that do not aid or abet the federal defendants in violating the injunctions entered against them. The injunction bars appellant franchisees from prosecuting the Wolf and Hargett suits on their own behalf and on behalf of other parties who also have not been brought before the district court. The injunction also bars the appellant franchisees - and all franchisees, as "unnamed class action plaintiffs" - from bringing the claims raised in Wolf and Hargett in any future suit. However, each Subway franchisee is a discrete entity with its own private contract and private legal rights. A judgment in favor of the Wolf and Hargett plaintiffs in their individual capacities would have no binding effect on the dispute before the district court between DAI and the federal defendants, which has in any event been concluded by the entry of final judgments in DAI's favor.
 
 
 22
 We recognize that appellants styled the Wolf and Hargett suits as actions on behalf of a class, and that this class includes defendant franchisees against whom the district court had already entered judgments and injunctions. If the district court's earlier decrees effectively barred the defendant franchisees from litigating the claims in Wolf and Hargett in their own names, then the assertion of those claims by the Wolf and Hargett plaintiffs, as class representatives for the enjoined defendants, might be seen as aiding the enjoined defendants to evade the decrees against them. We do not decide whether the district court might permissibly have entered a narrower injunction, barring the Wolf and Hargett plaintiffs from including the defendant franchisees within any plaintiff class asserting claims that the defendant franchisees were enjoined, or barred by res judicata, from prosecuting on their own behalf. We also do not decide whether Wolf and Hargett presented claims that the federal defendants were indeed enjoined or barred from pursuing. We need not address those questions because the injunction goes much further. It bars nonparty franchisees from litigating claims for their own benefit that do not aid or abet the federal defendants in evading the district court's decrees. We therefore conclude that the injunction is not sustainable under Rule 65(d).[4]
 
 
 23
 In addition to relying on Rule 65(d), the district court asserted its injunction was proper because the named defendants in the federal actions were "virtual representatives" of the plaintiffs in Wolf and Hargett. We have occasionally used the term "virtual representation" in dictum to describe an expansive notion of privity, a traditional rubric under which courts have bound persons to judgments in actions to which they were not parties. See Chase Manhattan Bank, N.A. v. Celotex Corp., 56 F.3d 343, 345 (2d Cir. 1995) (stating that under "virtual representation," res judicata may bar nonparties when "the interests involved in the prior litigation are virtually identical to those in later litigation"). But cf. Richards v. Jefferson County, 517 U.S. 793, 796-97 (1996) (reversing a holding that parties were bound by a prior judgment, without questioning the factual finding of the court below that the parties to the later suit had "essentially identical" interests to the parties in the earlier suit). The district court apparently believed that Duree's involvement in most of the suits, the fact that some of the initial Hargett plaintiffs had been federal defendants, and the common interests of franchisees established that the franchisees who appeared in federal court as defendants "virtually represented" the nonparty franchisees who brought the Wolf and Hargett lawsuits. According to the district court, the judgments and injunctions against the party franchisees therefore properly bound the nonparty franchisees.
 
 
 24
 We do not agree. At the outset, we question whether the court's findings about the relationship between the defendants before it and the nonparties, even if correct, would have been sufficient to satisfy Rule 65(d). On its face, Rule 65(d) allows a court to enjoin nonparties who are "officers, agents, servants, employees, . . . attorneys, [or] persons in active concert and participation." Fed. R. Civ. P. 65(d). Here, the district court found that the parties before it were effectively agents or servants ("virtual representatives") of the nonparties. This is very different. It is one thing for an injunction against a principal also to bind the principal's agents or servants. An order forbidding the principal to do an act on her own would normally be understood to bar the principal's servants or agents from doing the act for the principal's benefit. It is quite different for an injunction against an agent or servant also to bind the principal. By definition, the servant does not control the principal. If the court does not have jurisdiction over the principal, it is not easy to see why the court should have the power to bind her through an order directed against her servant. Thus, even if the district court had been correct in the factual finding that the defendants before it were the "virtual representatives" of the Wolf and Hargett plaintiffs, it does not necessarily follow that this fact would justify extending the injunction beyond the enjoined virtual representatives to their nonparty virtual principals.[5]
 
 
 25
 In any event, we see no basis for the court's finding that the defendant franchisees represented the nonparty franchisees. The fact that the nonparty appellants and the federal defendants shared the same interests and attorneys "created no special representational relationship between [them]." South Cent. Bell Tel. Co. v. Alabama, 119 S. Ct. 1180, 1185 (1999) (rejecting a finding of res judicata where the earlier and later plaintiffs had the same lawyer). The nonparty franchisees did not control the litigation of the defendant franchisees from behind the scenes. See Montana v. United States, 440 U.S. 147, 154-55 (1979); Ferris v. Cuevas, 118 F.3d 122, 127 (2d Cir. 1997). Furthermore, on the issues whose importance the Supreme Court stressed in Richards, the nonparty appellant franchisees lacked "notice of, [or] sufficient representation in," the prior action. Richards, 517 U.S. at 805. As DAI brought its prior suits against other franchisees in their individual capacities, the nonparties had no reason to believe that those suits would "conclusively resolve their legal rights." Richards, 517 U.S. at 799; see also South Cent. Bell, 119 S. Ct. at 1185. And, the record does not show either that the defendants in the federal actions "understood their suit to be on behalf" of absent franchisees, or that the district court in these actions has taken "care to protect the interests" of nonparties in any way. South Cent. Bell, 119 S. Ct. at 1184 (quoting Richards, 517 U.S. at 802). On this record, therefore, we cannot agree that the franchisees who were defendants in federal courts were in privity with, or acted as "virtual representatives" for, the nonparty franchisees who now appeal.
 
 
 26
 As a further reason to set aside the injunction as against nonparties, we note that traditional methods for binding those nonparties were easily available. As stated earlier, if DAI had wished to enjoin appellants from pursuing the Illinois state court actions, it could have followed the obvious route of suing them to compel arbitration and obtain an injunction. The identities of appellants were known, and DAI would have had no difficulty obtaining jurisdiction over them. As an alternative, DAI could have brought a class action designating the state court plaintiffs as class defendants. See Fed. R. Civ. P. 23(a) ("One or more members of a class may sue or be sued as representative parties on behalf of all . . . ."). Had DAI filed such a suit, the district court would have been required to determine that the class representatives would "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The safeguards built into the class action procedure assure that a judgment against a class is legitimately binding against class members who are nonparties. See Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 810-13 (1985). In this case, we see no reason to short-circuit the traditional avenues of directly serving the appellants with process or covering them by a class action in order to bind them.
 
 
 27
 Finally, we reject the district court's analysis of the challenge under the Anti-Injunction Act. That act bars a federal court from enjoining parties from proceeding with state court litigation, except "as expressly authorized by Act of Congress, or where necessary in aid of [the court's] jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. §2283; see also Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs, 398 U.S. 281, 287 (1970). The district court relied on the exception allowing such an injunction when necessary to effectuate its judgments. However, as we have already noted, the injunction bars nonparties from litigating actions in their own interests that would not vitiate any judgment against the party defendants. Accordingly, the injunction was far broader than justified under the "effectuate-its-judgments" exception. See Chick Kam Choo v. Exxon Corp., 486 U.S. 140, 146 (1988) (exceptions to the Anti-Injunction Act are "narrow").
 
 
 28
 For all of the foregoing reasons, we hold the court lacked authority to enter the portion of the injunction enjoining "all named and unnamed class action plaintiffs in the [Madison County] lawsuits from prosecuting . . . Hargett and Wolf and from prosecuting in any other action (whether now pending or filed in the future) any of the claims asserted in those lawsuits."[6]
 
 
 29
 2. The Injunction Against Representation by Duree
 
 
 30
 The second challenged part of the injunction barred all franchisees represented by Duree, unless approved in advance by the court, from "commencing or prosecuting litigation against DAI . . . that arises out of or relates to [a] franchise agreement." In entering this portion of the injunction, the district court noted Duree's litigation of numerous lawsuits, then cited a decision of this court requiring parties found to have engaged in vexatious and harassing litigation to obtain leave of the court before bringing further actions against certain defendants. See In re Martin-Trigona, 9 F.3d 226, 228-29 (2d Cir. 1993); see also Safir v. United States Lines, Inc., 792 F.2d 19, 23 (2d Cir. 1986).
 
 
 31
 Assuming that the Anti-Injunction Act allows a federal court to enter an injunction in order to prevent an attorney who has harassed a party through federal actions from harassing that party through state actions, see In re Martin-Trigona, 737 F.2d 1254, 1262-63 (2d Cir. 1984), we find that the challenged order was improper because of two factors. First, the district court made no finding that Duree engaged in vexatious and abusive litigation. DAI asserts that we should infer a finding of misconduct from the district court's statement that "Wolf and Hargett attempt to review challenges . . . that this Court and the Second Circuit have repeatedly and conclusively rejected." But, the district court deleted from DAI's proposed injunction a finding that Duree's conduct had been "vexatious . . . [and] an abuse of the legal system," and the court declined to impose sanctions. And, although DAI says that we may independently find a pattern of vexatious conduct, so doing would be improper given the complexity of the record and the evident uncertainty of the judge most familiar with the facts.
 
 
 32
 The second problem with the injunction is that it is directed against franchisees who are innocent of misconduct and are strangers to the district court.[7] If an injunction to prevent Duree from multiplying improper lawsuits is justified, then it is Duree who should be enjoined, not innocent franchisees.
 
 CONCLUSION
 
 33
 For the foregoing reasons, the challenged portions of the injunction of July 29 are vacated.
 
 
 
 Notes:
 
 
 *
 The Honorable Paul R. Michel, Circuit Judge for the United States Court of Appeals for the Federal Circuit, sitting by designation.
 
 
 [1]
 See Doctor's Assocs., Inc. v. Distajo, 870 F. Supp. 34 (D. Conn. 1994), aff'd in part and rev'd in part, 66 F.3d 438 (2d Cir. 1995) ("Distajo I"), on remand, 944 F. Supp. 1010 (D. Conn. 1996), aff'd, 107 F.3d 126 (2d Cir. 1997) ("Distajo II"); Doctor's Assocs. v. Stuart, 85 F.3d 975 (2d Cir. 1996); Doctor's Assocs., Inc. v. Jabush, 89 F.3d 109 (2d Cir. 1996), on remand, No. 3:95CV695 (PCD); Doctor's Assocs., Inc. v. Riggs, No. 96-9141(2d Cir. June 10, 1997) ("Riggs I"); Doctor's Assocs., Inc. v. Hollingsworth, 949 F. Supp. 77 (D. Conn. 1996), aff'd, No. 96-9599 (2d Cir. Feb. 5, 1998); Doctor's Assocs., Inc. v. Riggs, 162 F.3d 1147 (tbl.), 1998 WL 639414 (2d Cir. Feb. 5, 1998) ("Riggs II"); Doctor's Assocs., Inc. v. Neal, Nos. 96-7722, 97-7582 (2d Cir. Feb 5. 1998); Doctor's Assocs., Inc. v. Hamilton, 150 F.3d 157 (2d Cir. 1998).
 
 
 [2]
 In relevant part, the agreement typically provides: "Any controversy or claim arising out of or relating to this contract or the breach thereof shall be settled by arbitration . . . at a hearing to be held in Bridgeport, Connecticut . . . . The commencement of arbitration proceedings by an aggrieved party to settle disputes arising out of or relating to this contract is a condition precedent to the commencement of legal action by either party . . . ."
 
 
 [3]
 Title 9 U.S.C. § 4 provides: "A party aggrieved by the alleged . . . refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."
 
 
 [4]
 We acknowledge that in some limited circumstances, not present in this case, courts have enforced injunctions against nonparties apparently outside the categories of Rule 65(d). See, e.g., Paccione, 964 F.2d at, 1275-76 (2d Cir. 1992); United States v. Hall, 472 F.2d 261, 268 (5th Cir. 1972).
 Paccione, for example, "dealt with a person who interfered with the res, the disposition of which the district court had specifically restricted." 964 F.2d at 1275. In this case, the judgments are entirely in personam. Hall was a school desegregation case in which the court held members of the general public in contempt for actions that "imperiled the court's fundamental power to make a binding adjudication between parties properly before it." 472 F.2d at 265. Here, the injunction precludes nonparties from bringing actions that in no way interfere with the court's power over defendants. Furthermore, in this case, it is not impracticable, as it was in Hall, for the plaintiffs properly to join as parties (or to include in a class) the nonparties they sought to bind. And, neither Hall nor Paccione involved injunctions against state court proceedings that implicated the Anti-Injunction Act.
 Needless to say, in holding that an injunction against nonparties was not permissible in the complex circumstances of this case, we do not address other circumstances that might justify an injunction against nonparties.
 
 
 [5]
 For the same reasons, we believe the mere fact of an employer/employee, master/servant, or principal/agent relationship, without more, does not necessarily satisfy the standard of "persons in active concert," at least where the consequence would be to extend the injunction to cover the dominant party. If it did, one would never need to obtain jurisdiction over a principal in order to obtain a binding injunction over her. It would be sufficient to sue and enjoin her agent.
 
 
 [6]
 In the earlier Hollingsworth litigation, we summarily affirmed an injunction barring Florida franchisees who had not been made parties in federal court, but who were named co-plaintiffs in state court with franchisees who had been made parties in federal court, from litigating the very same class action that the parties had been barred from pursuing. That injunction is very different from the injunction we now vacate. The earlier injunction barred nonparties only from litigating a class action that parties were properly barred from pursuing and from which those parties might benefit. This injunction bars nonparties from litigating actions in their own names and on behalf of other nonparties, even though such actions would not benefit the parties. The portion of the earlier injunction that we considered on appeal reached only nonparties who were jointly litigating the state court action with parties. (The portion of the earlier injunction reaching "unnamed class plaintiffs" was not challenged on appeal.) This injunction expressly reaches nonparties who are not jointly litigating state court actions with parties. Finally, in the earlier cases, DAI had a reason for its failure to name the nonparties as parties: so doing would have destroyed diversity jurisdiction. In this case, DAI has identified no reason for its failure to join nonparties.
 
 
 [7]
 In addition to the appellants, the injunction reaches franchisees who have no relationship to any franchisees now or previously before the district court. Even a person who does not now own a franchise, but purchases one next year, would be forbidden from employing Duree as an attorney in litigation against DAI without obtaining leave of the court or violating the injunction.