Horace D. McCOWAN, Jr. and Sarah E. McCowan, Plaintiffs–Appellees,

v.

SEARS, ROEBUCK AND CO., and Dean Witter Reynolds, Inc., Defendants–Appellants.

Nos. 918, 1197, Dockets 89–9089, 90–7135.

United States Court of Appeals, Second Circuit.

Argued Feb. 26, 1990.

Decided May 25, 1990.

Amended July 10, 1990.

Charles W. Laughlin, Richmond, Va. (Thompson & McMullan, Richmond, Va., Harry H. Wise, New York City, of counsel), for plaintiffs-appellees.

Elizabeth Hoop Fay, Philadelphia, Pa. (John Linsenmeyer, John F.X. Peloso, Morgan, Lewis & Bockius, New York City, of counsel), for defendants-appellants.

Before OAKES, KEARSE and WALKER, Circuit Judges.[1]

WALKER, Circuit Judge.

Dean Witter Reynolds Inc. ("Dean Witter") and Sears, Roebuck and Co. ("Sears") appeal from orders of the United States District Court for the Southern District of New York (Robert L. Carter, *Judge*) denying their separate motions for a stay of court proceedings pending arbitration pursuant to section 3 of the Federal Arbitration Act (the "Act"), 9 U.S.C. § 3. For the reasons set forth below, we reverse the order of the district court denying Dean Witter a stay.

## BACKGROUND

Plaintiffs Horace D. McCowan, Jr. and Sarah E. McCowan filed two lawsuits in 1986 claiming damages arising from Dean Witter's allegedly fraudulent conduct in managing their securities account. The agreement between plaintiffs and Dean Witter under which the account was managed contained an arbitration clause.

On October 21, 1986, plaintiffs filed a complaint in the Southern District of New York against Dean Witter seeking damages for alleged violations of the Racke-

---

**1.** Judge Kearse disqualified herself after oral argument.

teering Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961 *et seq.;* sections 12(2) and 17(a) of the Securities Act of 1933 (the "1933 Act"), 15 U.S.C. §§ 77*l* (2), 77q(a); and sections 10(b) and 15(c)(1) of the Securities Exchange Act of 1934 (the "1934 Act"), 15 U.S.C. §§ 78j(b), 78*o*(c)(1). ("*McCowan I*").

On December 31, 1986, plaintiffs filed a second complaint in the United States District Court for the Eastern District of Virginia against both Dean Witter and Sears predicated on the same transactions which form the basis of the federal claims against Dean Witter initially filed in the Southern District of New York, alleging "controlling person liability" against Sears pursuant to the Virginia Securities Act, Va.Code Ann. § 13.1–501 *et seq.* ("*McCowan II*"). Although both Dean Witter and Sears were named as defendants in *McCowan II*, the complaint sought damages solely against Sears.

In April, 1987, the Virginia district court ordered *McCowan II* transferred to the Southern District of New York and denied without prejudice motions by Dean Witter and Sears to dismiss and for a stay of court proceedings pending arbitration. In May, 1987, *McCowan I* and *McCowan II* were consolidated before Judge Carter in the Southern District of New York. Thereafter, the district court referred the RICO and 1934 Act claims to arbitration, ordered the 1933 Act claims to be repleaded and, pending the repleading, deferred decision on the motion to dismiss the state law claims. *McCowan v. Dean Witter Reynolds, Inc.*, 682 F.Supp. 741 (S.D.N.Y.1987). Accordingly, the plaintiffs amended their *McCowan I* complaint.

Thereafter, the district court dismissed the 1933 Act claims on the grounds that section 17(a) does not afford a private right of action and section 12(2) does not apply to post-distribution transactions. *McCowan v. Dean Witter Reynolds, Inc.*, 1989 WL 38354 1989 U.S.Dist. LEXIS 3711 (April 12, 1989). This left before the district court only the Virginia state law claims as originally pleaded in *McCowan II*. Dean Witter and Sears subsequently moved to dismiss

those claims on the grounds that: (i) as to Dean Witter, the McCowans sought no relief; (ii) as to Sears, the McCowans failed to state a claim under the Virginia Securities Act because Sears was not a "controlling person"; and (iii) as to both Sears and Dean Witter, the McCowans failed to plead fraud with particularity as required by Fed. R.Civ.P. 9(b). In the alternative, Dean Witter moved for a stay pending arbitration pursuant to section 3 of the Federal Arbitration Act. Sears also sought a discretionary stay of the claims asserted against it pending arbitration of the underlying claims against Dean Witter.

On October 5, 1989, the district court denied defendants' motion to dismiss the claims in *McCowan II*. The court held that the Virginia Securities Act afforded the plaintiffs a private right of action for fraudulent security sales under section 13.-1–522(A)(ii); that Sears was a controlling person within the meaning of section 13.1–522(B) and that plaintiffs' allegations on that score were sufficient to state a claim; and, finally, that these fraud allegations were pleaded with sufficient particularity to withstand scrutiny under Fed.R.Civ.P. 9(b). The court also denied Dean Witter's motion to be dismissed on the ground that no relief was sought from it. The court held that Dean Witter was an indispensable party to the action pursuant to Fed.R. Civ.P. 19 as liability existed for Sears only if the plaintiffs could demonstrate that Dean Witter violated the Virginia Act. Significant to this appeal, the court also denied the defendants' requests for a stay pending arbitration and directed them to answer the complaint.

On October 16, 1989, Sears and Dean Witter filed a Motion for Reargument and Clarification "pursuant to Local Rule 3(j) of the Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York" on the grounds that the October 5, 1989 order "overlooks Dean Witter's right pursuant to the Federal Arbitration Act § 3 to have all controversies among Dean Witter Reynolds and the plaintiffs herein arbitrated and proceedings before this court stayed." The defendants sought an order granting Dean Witter a

stay under section 3 of the Act and granting Sears a discretionary stay.

On November 6, 1989, Dean Witter learned from the judge's chambers that an order would be filed denying defendants' motion to reargue. That same day, after learning of the disposition of the reargument motion, Dean Witter, acting pursuant to Federal Arbitration Act section 15(a)(1)(A),[2] filed its Notice of Appeal from the district court's October 5, 1989 order. On November 8, 1989, the district court filed and the clerk entered an order, captioned "Endorsement," denying Dean Witter's motion for reargument. On November 17, 1989, Sears—having previously moved only for a discretionary stay—moved for a mandatory stay of the *McCowan II* claims against it pursuant to Federal Arbitration Act section 3. The district court denied Sears' motion on January 17, 1990, 1990 WL 4024. Sears appealed from this decision and we ordered consolidation of both appeals.

## DISCUSSION

### 1. *Jurisdiction*

At the outset, we must address plaintiffs' argument that Dean Witter's appeal must be dismissed pursuant to Rule 4(a)(4) of the Federal Rules of Appellate Procedure on the ground that its notice of appeal, filed on November 6, 1989, was a nullity since it was filed while a Fed.R. Civ.P. 59(e) motion to alter or amend the judgment was pending. F.R.A.P. 4(a) states in pertinent part:

\* \* \* \* \* \*

(2) Except as provided in (a)(4) of this Rule 4, a notice of appeal filed after the announcement of a decision or order but before the entry of the judgment or order shall be treated as filed after such entry and on the day thereof.

\* \* \* \* \* \*

(4) If a timely motion under the Federal Rules of Civil Procedure is filed in the district court by any party: (i) for judg-

ment under Rule 50(b); (ii) under Rule 52(b) to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion is granted; (iii) under Rule 59 to alter or amend the judgment; or (iv) under Rule 59 for a new trial, the time for appeal for all parties shall run from the entry of the order denying a new trial or granting or denying any other such motion. *A notice of appeal filed before the disposition of any of the above motions shall have no effect.* A new notice of appeal must be filed within the prescribed time measured from the entry of the order disposing of the motion as provided above. No additional fees shall be required for such filing.

(emphasis added).

Plaintiffs argue that the district court's October 5, 1989 order was a judgment as defined by Fed.R.Civ.P. 54(a), that when Dean Witter filed its October 16 motion to reargue, it was a timely motion "under Rule 59 to alter or amend the judgment," and, since Dean Witter's November 6 Notice of Appeal was filed "before the disposition" of that motion, it had "no effect." Plaintiffs maintain that because Dean Witter never filed a timely notice of appeal after the order denying the motion for reargument was entered on November 8, we are without jurisdiction to hear the appeal.

Dean Witter responds with a welter of arguments designed to extricate itself from this apparent predicament. First it contends that the motion for reargument was not made pursuant to Rule 59(e) but pursuant to Rule 3(j) of the Local Rules of the Southern and Eastern Districts of New York. Next it argues that the October 5 order from which it appealed was not a "judgment" within the meaning of Rule 59(e) because it was interlocutory, it did not involve a reconsideration of the merits and no separate document was filed pursuant to Rule 58. Finally, Dean Witter argues that the Notice of Appeal should be treated

---

**2.** 9 U.S.C. § 15(a)(1)(A) provides that:
  (a) An appeal may be taken from—
    (1) an order—

    (A) refusing a stay of any action under section 3 of this title.

as if filed after the district court's disposition of its post-decisional motion.

F.R.A.P. 4(a)(4) is jurisdictional and unequivocal. *Spika v. Village of Lombard*, 763 F.2d 282, 284 (7th Cir.1985), *cert. denied*, 474 U.S. 1056, 106 S.Ct. 793, 88 L.Ed.2d 771 (1986). A notice of appeal filed by any party while a timely post-decisional motion specified in the rule is *sub judice* is a nullity. "[I]t is as if no notice of appeal were filed at all ... [and] the Court of Appeals lacks jurisdiction to act." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 61, 103 S.Ct. 400, 403, 74 L.Ed.2d 225 (1982). Appeals from final judgments have regularly been dismissed for want of jurisdiction after notices of appeal have been obliterated by the rule. *See, e.g., Fisher v. Klein*, 873 F.2d 626, 627 (2d Cir.1989); *Rados v. Celotex*, 809 F.2d 170, 172 (2d Cir.1986); Wright, Miller, Cooper and Gressman, *Federal Practice and Procedure*, Jurisdiction § 3950 at 361 (1977 and Supp.1990). Judge Posner has appropriately termed Rule 4(a) a "trap for the unwary into which many appellants, especially those not represented by counsel ... have fallen, with dire consequences since there is no way they can reinstate their appeal if the second notice of appeal is untimely." *Averhart v. Arrendondo*, 773 F.2d 919, 920 (7th Cir.1985).

Rule 4(a)(4) is a trap not because it is unclear, but because it is buried in Rule 4 of the Rules of Appellate Procedure with which most litigants have less familiarity than they do with the Federal Rules of Civil Procedure. Moreover, as Judge Posner stated in *Averhart*,

> [t]he idea that the first notice of appeal lapses [or is a nullity if filed while the post-decisional motion is pending] rather than merely being suspended is not intuitive, so unless a litigant has a pretty good understanding of how Rule 59 of the [civil] procedure rules interacts with Rule 4 of the appellate rules, he is apt to fall into the same hole into which Mr. Averhart has disappeared.

*Averhart*, 773 F.2d at 920.

Rule 4 makes the post-decisional and appeals process more efficient in several ways. By invalidating a notice of appeal filed while a motion to reargue is pending in the district court, the rule prevents duplicative substantive review in two different courts. By ensuring that the district judge pass first on disputed issues, the rule also helps narrow relevant issues for appeal and avoids unnecessary remands. And, finally, the rule affords an appellate court the opportunity to consider the district judge's assessment of the issues ultimately raised on appeal. *See Griggs*, 459 U.S. at 60 n. 2, 103 S.Ct. at 403 n. 2 (citing Notes of Advisory Committee on Appellate Rules, 28 U.S.C.App., p. 146 (1976 Ed., Supp. V)).

Most of Dean Witter's arguments are premised on the fact that the order appealed from was not a final judgment disposing of the litigation. But neither Rule 4(a)(4) nor Rule 59(e) are confined to final judgments. They apply to any "judgment," defined in Fed.R.Civ.P. 54(a) to include "a decree and any order from which an appeal lies." Such an order includes an interlocutory order like the one at issue here, made appealable by statute. *See* 6 Moore's *Federal Practice* ¶ 54.02 at 54–23 (2d ed. 1988). The October 5 order is no less a judgment because no "separate document" was filed pursuant to Fed.R.Civ.P. 58. We assume, without deciding, that the requirements for an effective judgment set forth in Rule 58 must generally be satisfied before this court's jurisdiction may be invoked pursuant to 9 U.S.C. § 15(a)(1)(A). However, Dean Witter waived the "separate document" requirement when it sought to appeal by filing its now challenged notice on November 6 in the absence of such a document. *See Bankers Trust Co. v. Mallis*, 435 U.S. 381, 388, 98 S.Ct. 1117, 1121, 55 L.Ed.2d 357 (1978).

■ Although Dean Witter labeled its motion to reargue as one under Rule 3(j) of the local rules, most substantive motions brought within ten days of the entry of judgment are functionally motions under Rule 59(e), regardless of their label or whether relief might also have been obtained under another provision. *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37,

40–41 (2d Cir.1982); 9 Moore's *Federal Practice* § 204.12[1] at 4–73 (2d ed. 1990); *see also* 6A Moore's *Federal Practice* § 59.12(1) at 59–265–66 (2d ed. 1989). We reject Dean Witter's assertion that its motion to reargue the stay application is not a substantive motion to reargue the merits and thus is not a Rule 59(e) motion. The motion was one to reargue the merits of the question forming the basis of the appeal—namely, the denial of the stay—and thus was properly one under Rule 59(e). The fact that the order appealed from is interlocutory does not change the interplay between Rule 59(e) and Rule 4(a)(4); the interest in harmonizing the operations of the district and appellate courts where post-decisional review is sought remains the same whether the district court decision appealed from is interlocutory or a final judgment.

Finally, Dean Witter's notice of appeal filed on November 6, two days before the entry of the district court's order denying the motion to reargue, is not saved by F.R.A.P. 4(a)(2). In a decision that neither party brought to our attention, the Supreme Court explained the interplay between Rules 4(a)(2) and (a)(4).

> Rule 4(a)4 specifically states that a notice of appeal, to be effective, must be "filed within the prescribed time measured from entry of the order disposing of the motion as provided above." Rule 4(a)(2) provides that *"[e]xcept as provided in (a)(4) of this Rule 4,* a notice of appeal filed after the announcement of a decision or order but before the entry of the judgment or order shall be treated as filed after such entry and on the day thereof"* (emphasis added). The plain import of this language is that with respect to the particular motions to which it applies, Rule 4(a)(4) constitutes an exception to the general rule that a notice of appeal filed after announcement of an order but before its entry in the docket will be deemed timely filed.

*Acosta v. Louisiana Department of Health and Human Resources,* 478 U.S. 251, 253–54, 106 S.Ct. 2876, 2877, 92 L.Ed.2d 192 (1986). "Any other interpretation," the Court explained, "would read the first clause of subdivision (a)(2) out of Rule 4 by holding that Rule 4(a)(4) does *not* constitute such an exception." Thus, the Supreme Court strictly construed the language of Rule 4(a)(4) and found ineffectual a notice of appeal filed after the oral announcement of a denial of a Rule 59 motion and before the entry of the written order memorializing the denial. Accordingly, the November 6 notice of appeal is not preserved by Rule 4(a)(2). Plaintiffs argue that because Dean Witter did not file a new notice following the entry of the order denying the motion for reargument, we are without jurisdiction to hear its appeal. We disagree.

■ Although Dean Witter's notice of appeal does not accord us jurisdiction of the district court's denial of its request for a mandatory stay, we may exercise pendent jurisdiction based on the timely appeal by Sears from the district court's ruling on Sears' motion for a stay pursuant to section 3 of the Federal Arbitration Act. Where the court has unquestioned jurisdiction of a cause "it would be absurd to require the court to close its eyes to another interlocutory order which, though not itself appealable, might infect the entire proceeding with error and thus require reversal after large expenditure of judicial and professional time." *Semmes Motors, Inc. v. Ford Motor Company,* 429 F.2d 1197, 1201 (2d Cir.1970) (Friendly, J.).

■ The guiding principle informing the discretionary application of pendent jurisdiction is whether review of the appealable order will involve consideration of factors relevant to the otherwise nonappealable order. *See General Motors Corporation v. City of New York,* 501 F.2d 639, 648 (2d Cir.1974); *see also San Filippo v. U.S. Trust Co. of New York, Inc.,* 737 F.2d 246, 255 (2d Cir.1984), *cert. denied,* 470 U.S. 1035, 105 S.Ct. 1408, 84 L.Ed.2d 797 (1985) (court may consider nonappealable issues where there is "sufficient overlap" in the factors relevant to the appealable and nonappealable issues in the case). While this doctrine has been utilized more commonly by this court to take jurisdiction over issues pendent to those before it—the parties

being the same, it may also be invoked to entertain appeals by parties not otherwise entitled to appeal on a theory of pendent party jurisdiction. *See, e.g., U.S. v. Tom,* 787 F.2d 65, 68 n. 3. (2d Cir.1986); *Barrett v. United States,* 798 F.2d 565, 570–71 (2d Cir.1986).

■ We are mindful that "pendent appellate jurisdiction is a procedural device that should rarely be used because of the danger of abuse." *Akerman v. Oryx Communications, Inc.,* 810 F.2d 336, 339 (2d Cir.1987) (citing *Marcera v. Chinlund,* 595 F.2d 1231, 1245 (2d Cir.1979) (Van Graafeiland, J., dissenting) *vacated on other grounds sub nom. Lombard v. Marcera,* 442 U.S. 915, 99 S.Ct. 2833, 61 L.Ed.2d 281 (1979)). While we do not believe that litigants should generally be permitted to circumvent the rules of appellate procedure by obtaining review of otherwise nonappealable orders on the coattails of an appealable order, under the circumstances of this case, we find the exercise of pendent appellate jurisdiction warranted. The issues in Sears' and Dean Witter's appeals overlap substantially. Each appeal requires analysis of the arbitration agreement entered into by the plaintiffs and Dean Witter. Furthermore, determination of the appropriateness of a stay for either party requires examination of the relationship between the defendants and the basis upon which the plaintiffs assert liability against them. Under these circumstances, and in view of the fact that but for Dean Witter's inadvertent procedural default this Court would have had jurisdiction over Dean Witter's fully briefed and argued appeal, pendent review of the district court's denial of Dean Witter's stay is a wise and time-saving exercise of our discretion. We thus turn to the merits.

2. *The Denial of Stays Pending Arbitration*

Both Dean Witter and Sears argue that the district court erred in not granting their requests for stays pending arbitration of the Virginia Securities Act claims asserted in *McCowan II.* In its October 5 order, the district court, apparently treating its

power to grant a stay as to both defendants as discretionary pursuant to *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.,* 460 U.S. 1, 20 n. 23, 103 S.Ct. 927, 939 n. 23, 74 L.Ed.2d 765 (1983), denied both requests. As we have noted, Dean Witter then filed a motion to reargue in which it reasserted that it had a right to a stay pursuant to section 3 of the Federal Arbitration Act. The district court's "Endorsement" filed November 8, "affirm[ed] its earlier ruling denying the defendants' motion for a stay pending the outcome of arbitration." The court found that Dean Witter was a "primary actor" and was, therefore, properly joined as an indispensable party. While not referring to section 3 of the Act or discussing its reach, the district court stated:

> The court recognizes that Dean Witter has an arbitration agreement with the plaintiffs. However, the dispute in this case is between the plaintiffs and Sears, and no judgment is, or can be, demanded of Dean Witter. The plaintiffs have made allegations against Sears which are properly adjudicated in this forum, and they are entitled to timely consideration of their claims.

On November 17, 1989, Sears, which had previously requested only a discretionary stay pending arbitration of the claims against Dean Witter, moved pursuant to section 3 of the Arbitration Act for a mandatory stay and referral of the claims against it to arbitration. On January 17, 1990, the court denied Sears' motion finding that Sears was neither a party to an arbitration agreement with plaintiffs nor an intended beneficiary of the agreement between Dean Witter and the McCowans. The district court stated that "[a]lthough Sears may be an incidental beneficiary of the arbitration agreement, clearly the plaintiffs and Dean Witter did not make this contract to confer a direct benefit on Sears."

Before we turn to the Federal Arbitration Act, it is important to examine briefly the nature of the claims asserted in *McCowan II.* Plaintiffs allege that Dean Witter conducted fraudulent unauthorized

trades in the account it managed for them in violation of the Virginia Securities Act § 13.1–522(A). Their claim against Sears is based solely on Sears' status as a controlling person of Dean Witter. Virginia Securities Act § 13.1–522.C. Plaintiffs attribute no fraudulent conduct to Sears and, all agree, no recovery against Sears is possible unless plaintiffs first prove their claim against Dean Witter.

In enacting the Federal Arbitration Act, Congress created national substantive law governing all questions of the validity and enforceability of arbitration agreements within its scope. *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 845 (2d Cir.1987) (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985)); *see also Moses H. Cone*, 460 U.S. at 24, 103 S.Ct. at 941; *Varley v. Tarrytown Associates, Inc.*, 477 F.2d 208, 209 (2d Cir.1973). Hence, whether plaintiffs are bound by the arbitration clause of the contract with Dean Witter is a matter of federal law, which incorporates generally accepted principles of contract law. *See Genesco*, 815 F.2d at 845 (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404–05, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967)). Accordingly, section 2 of the Act provides that arbitration provisions "shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

Section 3 of the Act provides:

§ 3. Stay of proceedings where issue therein referable to arbitration

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

A commonsense reading of this section suggests that if there is a federal action "upon" an "issue referable to arbitration" by the terms of an arbitration agreement, then the federal court must "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."

The relevant arbitration clause agreed to by plaintiffs and Dean Witter states that "any controversy between [Dean Witter] and the undersigned [plaintiffs] arising out of or relating to this contract or the breach thereof shall be settled by arbitration." Plaintiffs do not claim that the dispute in *McCowan II*, does not "aris[e] out of" or "relat[e] to" the contract containing the arbitration clause, nor could they. Indeed, it is Dean Witter's alleged mishandling of the very account opened in connection with the parties' contract that is at issue in both *McCowan I* and *McCowan II*. The district court determined as much when it granted the stay in *McCowan I* of federal claims based on the same allegations of misconduct—a decision which was clearly correct in light of *Shearson American Express v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). Rather, plaintiffs assert that there exists no arbitrable "controversy" between them and Dean Witter in *McCowan II* because no judgment is sought against Dean Witter in that action.

■ We believe that the absence of a request for relief against Dean Witter does not determine whether a controversy exists between Dean Witter and plaintiffs, and that the district court erred when it held that the absence of a request for a judgment against Dean Witter, barred Dean Witter from invoking the agreement. Although fashioned as two separate lawsuits, there is in reality a single "controversy" at issue—as that term would have been understood by the contracting parties—giving rise to claims under three separate laws: the 1934 Act, RICO and the Virginia Securities Act. The first two demand a money judgment from Dean Witter; the third requires a showing of liability against Dean

Witter as a predicate to recovery against Sears, but demands no monetary judgment from Dean Witter. Dean Witter's contractual right to arbitrate "any controversy" arising out of or relating to the contract between the parties would be seriously impaired if *McCowan II* were not stayed pending arbitration. Under these circumstances, we believe that Dean Witter has a right to the mandatory stay afforded by section 3 of the Act.

Dean Witter is involved in a "controversy," as that term is commonly understood, with plaintiffs over its management of their account. *See* Webster's Third New International Dictionary 497 (1981) ("the act of disputing or contending ... a cause, occasion, or instance of disagreement or contention"). Even if the parties intended to arbitrate controversies defined as "a suit in law or equity," *McCowan II* is such a suit, *see* Black's Law Dictionary 298 (4th ed. 1979), and Dean Witter as a named defendant would be obliged, if the suit were to proceed, to file an answer and bear the costs of its defense.

Moreover, the presence of the *McCowan I* federal claims before the arbitrator weighs heavily in favor of a stay of the state law claims in *McCowan II*. If *McCowan II* were allowed to proceed against Dean Witter in federal court, Dean Witter's right to arbitrate the federal claims already referred to arbitration in *McCowan I* would be impaired since any issues determined against Dean Witter in court proceedings in *McCowan II* could have collateral estoppel effect on the arbitration. *See Dickson v. Heinold Securities, Inc.*, 661 F.2d 638, 644 (7th Cir.1981); *Mansbach v. Prescott, Ball, Turben*, 598 F.2d 1017, 1031 (6th Cir.1979) (principles of collateral estoppel prevent relitigation of issues in arbitration that have already been decided in federal court); *N.Y.S. Ass'n for Retarded Children v. Carey*, 456 F.Supp. 85, 96 (E.D.N.Y.1978), *aff'd*, 596 F.2d 27 (2d Cir.1979); *J.D. Marshall Intern, Inc. v. Redstart, Inc.*, 656 F.Supp. 830, 834 (N.D. Ill.1987) (prior federal proceeding has full collateral estoppel and res judicata effects on subsequent arbitration). While section 13.1–522(A) of the Virginia Securities Act differs from Rule 10b–5 of the 1934 Act by placing the burden of disproving scienter on the defendant rather than requiring the plaintiff to prove it, and by making negligent as well as intentional misrepresentations actionable, *see* 4 A. Bromberg & L. Lowenfels, *Securities Fraud & Commodities Fraud*, § 8.4, pp. 204.1, 204.146, 204.-170 (1989), in other respects certain elements of the state and federal offenses appear to be the same, including a failure to disclose, materiality and causation. *Id.* at § 8.1, p. 195. According to Professor Loss, the Virginia statute, like other state fraud statutes modeled after section 101 of the Uniform Securities Act, "is substantially the SEC's rule 10b–5." *See* L. Loss, *Commentary on the Uniform Securities Act*, 6 (1976). Thus, the preclusive effect of court action in *McCowan II* in the *McCowan I* arbitration is potentially substantial and significant.

Our interpretation of the arbitration agreement to include the *McCowan II* claims against Dean Witter furthers and is supported by the "liberal federal policy favoring arbitration." *Moses H. Cone*, 460 U.S. at 24, 103 S.Ct. at 941. "The legislative history of the Act establishes that the purpose behind its passage was to ensure judicial enforcement of privately made agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985); *see also Mitsubishi Motors Corp.*, 473 U.S. at 625, 105 S.Ct. at 3352. Thus, we conclude that the *McCowan II* claims against Dean Witter must be stayed pending arbitration under section 3 of the Arbitration Act.

Sears moved in the district court for a stay of *McCowan II* as an exercise of the district court's discretion at the same time Dean Witter moved pursuant to Arbitration Act section 3. After the district court denied both motions, Sears moved for a section 3 stay claiming a right to enforce the arbitration agreement as a third party beneficiary of the agreement or based on its status as a "controlling person" of Dean Witter. In view of our holding that Dean Witter is entitled to a mandatory section 3

stay, we need not determine whether Sears also has such a right. The practical effect of the stay as to Dean Witter, an indispensable party in *McCowan II,* is that the suit against Sears, which is wholly dependent on the claim against Dean Witter, cannot proceed.

Judgment reversed.