**DOCTOR'S ASSOCIATES, INC., Plaintiff,**

v.

**David HOLLINGSWORTH, et al., Defendants.**

**Civil No. 3:96cv1887.**

United States District Court, D. Connecticut.

Nov. 25, 1996.

---

RULING ON PENDING MATTERS

DORSEY, Chief Judge.

Plaintiff Doctor's Associates, Inc. ("DAI") filed 15 separate Petitions to Compel Arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, with accompanying motions for injunctive relief. Defendants David Hollingsworth, *et al.* filed motions to dismiss each of the Petitions to Compel Arbitration. For the following reasons, DAI's petitions and motions are granted, and Defendants' motions are denied.

## I. BACKGROUND

DAI is the national franchisor of Subway sandwich shops and is a Florida corporation. Defendants are Subway franchisees. DAI entered into standard written franchise agreements with Defendants, permitting them to operate Subway shops. The agreements contain an arbitration clause (¶ 10c), which provides that "[a]ny controversy or claim arising out of or relating to this contract or the breach thereof shall be settled by Arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association at a hearing to be held in Bridgeport, Connecticut...."

Disputes arose and the franchisees brought suit in state court in Madison County, Illinois against Frederick DeLuca and Peter Buck, the co-owners of DAI, DAI's administrative affiliate, Franchise World Headquarters, Inc. ("FWHI"), the trustees of The Subway Franchisee Advertising Fund Trust ("SFAFT"), the executive director of the SFAFT, and eight vendors to Subway franchisees. The Madison County complaint is a class action comprised of former and current Subway franchisees.[1] The complaint alleges various breaches of fiduciary duty and conspiracy claims relating to the alleged mismanagement and misappropriation of contributions to the SFAFT.

DAI demanded arbitration with each of the 31 named Madison County plaintiffs in 18

Edward Wood Dunham, Wiggin & Dana, New Haven, CT, for Plaintiff.

David M. Duree, Reinert, Duree & Crane, St. Louis, MO, for Defendants.

1. Apparently the state action has not been certified as a class yet.

separate arbitrations.[2] DAI subsequently filed 15 separate petitions to compel arbitration and motions for injunctive relief, seeking to have the state court matters enjoined and resolved by arbitration. These cases were consolidated under the lead case, 3:96cv1887 *Doctor's Associates v. Hollingsworth.*[3] DAI did not petition here to compel arbitration with the 3 groups of Madison County plaintiffs from Florida, with whom DAI has demanded arbitration as there is no diversity jurisdiction between them and DAI since DAI is a Florida corporation.

This is another in a long series of disputes between DAI and various Subway franchisees regarding their obligation to arbitrate under the franchise agreement. This time the franchisees' counsel has introduced a new wrinkle, having styled their state cause of action as a class action without naming DAI as a party.

The franchisees moved to dismiss DAI's petitions alleging that: (1) there is no subject matter jurisdiction; (2) the arbitration clause does not embrace class action lawsuits; and (3) DAI's attempt to use the arbitration clause would eliminate a cause of action under the Illinois Class Action Statute and is thus void as against public policy, unconscionable and is overreaching by DAI. The franchisees further contend that since DAI is not a defendant in the state court action there is nothing to arbitrate and DAI is not an aggrieved party entitled to compel arbitration pursuant to 9 U.S.C. § 4. The parties were heard on October 11, 1996.

## II. DISCUSSION

### A. Petition to Compel Arbitration

### 1. Arbitration of Class Actions

The franchisees contend that arbitration is improper because the scope of the arbitration clause in the most recent franchise agreements exclude arbitration of class actions. Brief in Support of Motion to Dismiss, p. 3. The Franchise Agreements now provide that "[e]ach claim or controversy will be arbitrated by the Franchisee on an individual basis and shall not be consolidated in any arbitration action with the claim of any other franchisee." 1993 Franchise Agreement ¶ 10c, p. 9. DAI has demanded 18 separate arbitrations and has not sought to consolidate them. DAI's arbitration demands are not precluded by the arbitration clause.

### 2. Unconscionability

The franchisees conclusorily argue that "[t]he use of the arbitration clause to attempt to eliminate a cause of action under the Illinois Class Action Statute is void as against public policy, is unconscionable and the result of overreaching by DAI ..." and cite *Graham Oil Co. v. Arco Products Co.*, 43 F.3d 1244 (9th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 275, 133 L.Ed.2d 195 (1995); *Postal Instant Press, Inc. v. Sealy,* 43 Cal.App.4th 1704, 51 Cal.Rptr.2d 365 (1996); and *Kubis & Perszyk Associates, Inc. v. Sun Microsystems, Inc. et al,* 146 N.J. 176, 680 A.2d 618 (1996). Brief in Support of Motion to Dismiss, p. 3. The franchisees do not identify the Illinois statute to which they refer. The authority they cite provides no support for their position.[4] The Illinois class

**2.** Although there are 31 individuals named in the state court action, DAI grouped franchisee spouses and franchisee business partners together in its arbitration demands, for a total of 18 separate arbitrations.

**3.** The following cases were consolidated: 3:96cv1887 *Doctor's Associates v. Hollingsworth;* 3:96cv1888 *Doctor's Associates v. Arkis;* 3:96cv1890 *Doctor's Associates v. Childers;* 3:96cv1891 *Doctor's Associates v. Cooksey;* 3:96cv1892 *Doctor's Associates v. Farr;* 3:96cv1893 *Doctor's Associates v. Gonzalez;* 3:96cv1894 *Doctor's Associates v. Hoder;* 3:96cv1895 *Doctor's Associates v. Johal;* 3:96cv1896 *Doctor's Associates v. Madgett;* 3:96cv1897 *Doctor's Associates v. McCusker;*

3:96cv1898 *Doctor's Associates v. Patel;* 3:96cv1899 *Doctor's Associates v. Sipiora;* 3:96cv1900 *Doctor's Associates v. Spielvogel;* 3:96cv1901 *Doctor's Associates v. Weston.* Since the commencement of this action, Defendant-franchisee Bonhotel withdrew from the state court action and therefore, was dismissed from this action, 3:96cv1889 *Doctor's Associates v. Bonhotel.*

**4.** *Graham Oil v. Arco Products Co.,* 43 F.3d 1244 (9th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 275, 133 L.Ed.2d 195 (1995), held that an arbitration clause that required franchisees to forfeit statutory rights granted under the Petroleum Marketing Practices Act—the purpose of which is to protect franchisees—was invalid.

action statute does not preclude enforcement of an otherwise valid arbitration clause.

### 3. *Subject Matter Jurisdiction*

■ Pursuant to § 4 of the FAA, district courts only have jurisdiction to hear petitions to compel arbitration if the court "would have jurisdiction under Title 28, in a civil action ... of the subject matter of a suit arising out of the controversy between the parties...." 9 U.S.C. § 4. Accordingly, "there must be diversity of citizenship or some other independent basis for federal jurisdiction before the [arbitration] order can issue." *Doctor's Associates, Inc. v. Distajo*, 66 F.3d 438, 444 (2d Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1352, 134 L.Ed.2d 520 (1996) (citation omitted). DAI alleges diversity as the basis for federal subject matter jurisdiction. 28 U.S.C. § 1332. The franchisees contest diversity jurisdiction because the amount in controversy does not exceed $50,000. DAI, having invoked federal jurisdiction, has the burden of proving the requisite amount in controversy. *United Food Local 919 v. Centermark Properties*, 30 F.3d 298, 301 (2d Cir.1994); *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir.1979).

### a. *Amount in Controversy*

■ The franchisees contend that the requisite amount in controversy does not exist between DAI and each member, named and unnamed, of the state class action, citing *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973).[5] In *Zahn*, the Supreme Court held:

> When two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, it is

essential that the demand of each be of the requisite jurisdictional amount; but when several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest, it is enough if their interests collectively equal the jurisdictional amount.

414 U.S. at 294, 94 S.Ct. at 508 (quoting *Troy Bank v. G.A. Whitehead & Co.*, 222 U.S. 39, 40–41, 32 S.Ct. 9, 9–10, 56 L.Ed. 81 (1911)). The franchisees' reliance on *Zahn* is misplaced. Since "diversity jurisdiction is determined by reference to the parties named in the proceeding before the district court," *Distajo*, 66 F.3d at 445, the parties who must have an amount in controversy with DAI that exceeds $50,000 are those named in the petitions to compel arbitration, not each and every member of the class. Nevertheless, the question is what is the amount in controversy with the individuals named in the petitions to compel arbitration.

■ DAI's petitions to compel arbitration state that the amount in controversy exceeds $50,000, and " 'the sum claimed by the plaintiff [DAI] controls if the claim is apparently made in good faith. It must appear *to a legal certainty* that the claim is really less than the jurisdictional amount to justify a dismissal.' " *A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 87 (2d Cir.1991) (quotation omitted) (emphasis in original). *See also Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3rd Cir.1995); *Sharp Electronics Corp. v. Copy Plus, Inc.*, 939 F.2d 513, 515 (7th Cir.1991); *Matter of Milliken & Co. (Wilson Bus. Prod. Sys. & Serv., Inc.)*, 1992 WL 188387 at *5–*6 (July 30, 1992 S.D.N.Y.). "[T]he amount in controversy in a petition to compel arbitration ... is determined by the underlying cause of action that would be

That is not the case here. *Postal Instant Press, Inc. v. Sealy*, 43 Cal.App.4th 1704, 51 Cal. Rptr.2d 365 (1996), did not address class actions or the validity of arbitration clauses. Similarly, *Kubis & Perszyk Assoc. Inc. v. Sun Microsystems Inc. et al.*, 146 N.J. 176, 680 A.2d 618 (1996), did not involve an arbitration clause or a class action. Instead, the New Jersey court held that forum selection clauses included in contracts subject to the Franchise Practices Act are presumptively invalid.

5. The franchisees initially challenged jurisdiction on the basis that there is *no* amount in controver-

sy for purposes of diversity jurisdiction because they are not seeking any damages from DAI in the state court action. Answer ¶ 13. The franchisees' argument is without merit. The "suit arising out of the controversy of the parties," 9 U.S.C. § 4, refers to the "parties to the petition to compel." *Distajo*, 66 F.3d at 445. As such, *"diversity jurisdiction is determined by reference to the parties named in the proceeding before the district court,* as well as any indispensable parties who must be joined pursuant to Rule 19 of the Federal Rules of Civil Procedure." *Id.* (emphasis added).

arbitrated." *Jumara*, 55 F.3d at 877. The court should look at the "possible award resulting from the desired arbitration, since the petition to compel is only the first step in litigation which seeks as its goal a judgment affirming award." *Davenport v. Procter & Gamble Mfg. Co.*, 241 F.2d 511, 514 (2d Cir. 1957). The amount in controversy is the difference "between winning and losing the underlying arbitration...." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257, n. 1 (5th Cir.1996).

■ The underlying dispute to be arbitrated, as set forth in DAI's Demands for Arbitration, is whether DAI or any individual or entity acting on its behalf and its owners, Deluca and Buck, engaged in the misconduct alleged in the state court complaint, which was attached to the Demand for Arbitration. "[T]he amount in controversy, in an action for declaratory ... relief, is the value of the right to be protected or the extent of the injury to be prevented." *Webb*, 89 F.3d at 256 (quotation omitted). *Accord: Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347, 97 S.Ct. 2434, 2443–44, 53 L.Ed.2d 383 (1977) ("[i]n actions seeking declaratory or injunctive relief it is well established that the amount in controversy is measured by the value of the object of the litigation ..."). Franchisees seek monetary damages in the state court and that amount is the "injury to be prevented" in the arbitration. As such, the franchisees' state court complaint provides a basis for ascertaining the amount in controversy in DAI's Petitions to Compel Arbitration.

■ In Count I of the class action, the franchisees seek actual damages against the trustees, the co-owners of DAI, FWHI and the executive director of the SFAFT in excess of $100,000,000 and an additional award of $100,000, severally, against each trustee and the executive director, $500,000 against FWHI, $20,000,000 against DeLuca and $20,-000,000 against Buck as punitive damages, plus court costs, for a total of $141,800,000 in damages.[6] In Count II the franchisees seek actual damages in excess of $80,000,000 from the trustees, the co-owners of DAI, FWHI and the executive director, actual damages in excess of $10,000,000 from each vendor, and an additional award of $100,000 from each of the trustees and the executive director, $500,000 from FWHI, $1,000,000 from each vendor, $20,000,000 from DeLuca and $20,-000,000 from Buck as punitive damages, plus court costs, for a total of $219,800,000 in damages.

■ In sum, the franchisees seek over $361,000,000 in damages—well over the $50,-000 minimum.[7] At the October 11 hearing, the franchisees argued that some franchisees have owned their franchises for a short period of time and therefore will only claim a small amount of damages. The difficulty in ascertaining the amount in controversy with respect to the franchisee-defendants named in the petitions results from their failure in the state action to set forth individual claims. The state court complaint does not break down damages by plaintiffs or even assert individual, distinct injuries—in fact, the complaint does not allege how the franchisees were injured at all. The franchisees are suing for a lump sum for alleged breach of fiduciary duty and conspiracy relating to one common fund—the SFAFT—created and administered for the benefit of all the franchisees.[8]

DAI asserts that if it wins each arbitration with the franchisee-defendants and successfully enjoins them here it will have eliminated a damage exposure of over $261,000,000, $14,500,000 per arbitration. This is not an

---

6. Punitive damages may be included in calculating the amount in controversy, *A.F.A. Tours*, 937 F.2d at 87 (citations omitted), but costs are not. 28 U.S.C. § 1332.

7. DAI calculated the damages sought by the franchisees as $261,000,000 which, if correct, does not alter the result.

8. Defendants have requested that the Court defer ruling on DAI's petitions to compel and motions for injunctive relief so that they can conduct discovery on damages. DAI is entitled to a prompt resolution of its petitions and motions for injunctive relief and "the initial jurisdictional determination need not await extensive discovery, but may be based on the information reasonably and immediately available to the court." *Carlough v. Amchem Products, Inc.*, 10 F.3d 189, 201 (3rd Cir.1993) (citations omitted).

unreasonable method to calculate the individual amounts in controversy—the damages sought in the state class action is the "injury to be prevented" in the arbitration, and the franchisees have not provided any other basis to calculate the individual amounts in controversy.[9] Due to such valuation problems and in the face of such large damage claims by the franchisees, it is impossible to conclude to a legal certainty on the current record that the amount in controversy is less than the jurisdictional amount.[10]

#### b. *Standing—Aggrieved Party*

█ The franchisees also contend that DAI is not an "aggrieved party" since it is not a defendant in the state lawsuit and therefore, it is not entitled to compel arbitration under 9 U.S.C. § 4. A party is entitled to petition to compel arbitration if the party is "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration...." 9 U.S.C. § 4.

DAI and the franchisees are parties to a written arbitration clause. The franchisees have refused to arbitrate. As such, DAI is an "aggrieved party" entitled to petition to compel arbitration. *See Britton v. Co-op Banking Group*, 916 F.2d 1405, 1413 (9th Cir.1990) (parties to the contract, third party beneficiaries of the contract and agents of a party to the contract have standing to compel arbitration); *Mutual Ben. Life Ins. Co. v. Zimmerman*, 783 F.Supp. 853, 865–66 (D.N.J.1992), *aff'd*, 970 F.2d 899 (3rd Cir. 1992) (signatories to contract and nonsignatories who are agents of a party to the contract or are third party beneficiaries of the contract may seek to compel arbitration).

The fact that the franchisees sued the owners and agents of DAI and did not name DAI as a party does not prevent DAI from being an aggrieved party. Albeit in a slightly different context, the Second Circuit has refused to allow parties to an arbitration agreement to evade arbitration through artful pleading. In *McCowan v. Sears, Roebuck and Co.*, 908 F.2d 1099, 1106 (2d Cir.1990), *cert. denied*, 498 U.S. 897, 111 S.Ct. 250, 112 L.Ed.2d 209 (1990), it was found that "the district court erred when it held that the absence of a request for a judgment against Dean Witter barred Dean Witter from invoking the agreement." "[T]he absence of a request for relief ... does not determine whether a controversy exists...." *Id.* *See also Doctor's Associates, Inc. v. Stuart*, 85 F.3d 975, 984–85 (2d Cir.1996) (franchisee's state court action "against DAI and its owners and agents is a bald attempt to evade its duty to arbitrate with DAI").

"[T]he acts of employees of a party to an arbitration agreement are arbitrable 'as long as the challenged acts fall within the scope of the customer agreement.'" *Mosca v. Doctors Associates, Inc.*, 852 F.Supp. 152, 155 (E.D.N.Y.1993). Accordingly, "[t]his court will not permit plaintiffs to avoid arbitration simply by naming individual agents of the party to the arbitration clause and suing them in their individual capacity. To do so would be to subvert the federal policy favoring arbitration and the specific arbitration clause in the instant case." *Id.* at 155 (citation omitted).

Moreover, although the state court complaint does not name DAI as a party, it does allege misconduct on the part of DAI. The complaint repeatedly alleges misconduct by the named defendants, DeLuca and Buck, as well as the "companies which they own and control."[11] DAI is the company that DeLuca and Buck own and control. As conceded by DAI, DAI may be legally responsible for the damages sought in the state action because FWHI, DeLuca and Buck acted on DAI's behalf. Additionally, the franchisees allege in the state court action that DAI is

---

9. *See In re Agent Orange Prod. Liability Litigation*, 818 F.2d 145, 163 (2d Cir.1987), *cert. denied*, 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 647 (1988) (rejecting claim that not all class members met jurisdictional requirement because there was no allegation that claims were made in bad faith and there was no basis to find that amounts were less than claimed).

10. *See Watson v. Shell Oil Co.*, 979 F.2d 1014, 1021 (5th Cir.1992); *In re A.H. Robins Co., Inc.*, 880 F.2d 709, 723–25 (4th Cir.1989), *cert. denied*, 493 U.S. 959, 110 S.Ct. 377, 107 L.Ed.2d 362 (1989).

11. Complaint ¶¶ 42–44, ¶¶ 46–49 of Count I; ¶¶ 11–14 of Count II.

the alter ego and agent of DeLuca and Buck. Complaint ¶ 38. " '[I]t is clear that the consequence of applying the alter ego doctrine is that the corporation and those who have controlled it without regard to its separate entity *are treated as but one entity, and . . . the acts of one are the acts of all.*' " *Doctor's Associates, Inc. v. Distajo,* 66 F.3d 438, 453 (2d Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1352, 134 L.Ed.2d 520 (1996) (quotation omitted) (emphasis added). As their state causes of action fall within the scope of the arbitration agreement, the franchisees cannot evade their contractual obligation to arbitrate by omitting DAI as a party.

### c. *Scope of the Arbitration Clause*

■ Courts are required to "rigorously enforce agreements to arbitrate . . .," *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 221, 105 S.Ct. 1238, 1242–43, 84 L.Ed.2d 158 (1985), and "any doubt concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). The arbitration clause agreed to by the franchisees in this case obligates them to arbitrate "any controversy or claim arising out of or relating to [the franchise] Agreement or the breach thereof." Franchise Agreement ¶ 10c. Such broad language requires arbitration when the "allegations underlying the claims *'touch matters'* covered by the parties' . . . agreements . . ., *whatever the legal labels attached to them.*" *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,* 815 F.2d 840, 846 (2d Cir.1987) (emphasis added).

■ In Count I of the state court complaint, the franchisees allege that the trustees of the SFAFT, the co-owners of DAI (DeLuca and Buck), the executive director of the SFAFT and FWHI breached their fiduciary duties to the franchisees through various mismanagement and misappropriation of

the advertising funds contributed to the SFAFT. The SFAFT was established in 1989 to administer the 2.5% advertising fee assessed against the franchisees under the Franchise Agreement. The SFAFT is responsible for setting policy on how advertising funds are spent, selecting and working with the National Advertising agency and approving chain advertising campaigns. The SFAFT also administers vendor advertising contributions and other advertising funds. A 12 member board of trustees, each a Subway franchisee chosen in an election in which all Subway franchisees may vote, governs the SFAFT.[12]

Although the SFAFT is designed to function autonomously from DAI,[13] the SFAFT is directly related to the Franchise Agreement. The Franchise Agreement requires franchisees to contribute a set portion of their gross sales to the SFAFT. Franchise Agreement 5i, p. 7. The Franchise Agreement outlines the procedure for making such contributions[14] and the consequences of a failure to comply. Franchise Agreement 5f, p. 6. The Franchise Agreement references the Offering Circular, which details SFAFT's functioning and cross-references the Franchise Agreement. "SFAFT has not been established for the purpose of making a profit, and the income, if any, received by SFAFT will be used solely for the *collective advertising and promotional benefit of the Subway franchises, and no part benefits solely DAI or any individual franchisee.*" Offering Circular, p. 331 (emphasis added).

Mishandling of the SFAFT fund, created in connection with the Franchise Agreement, is at issue in the state court action and, therefore, Count I "arise[s] out of" and "relate[s] to" the Franchise Agreement and is subject to arbitration. *See McCowan,* 908 F.2d at 1106 (it is indisputable that the "alleged mishandling of the very account

12. The SFAFT leases office space from defendant-FWHI, a corporation owned by DeLuca and Buck, which provides administrative services to the Subway system. FWHI has a written contract with DAI and collects fees and royalties from franchisees, oversees store design and approves products for sale by franchisees. FWHI is not a party to the Franchise Agreement and

has no other contractual relationship with Subway franchisees.

13. *See* Franchise Offering Circular ("Offering Circular") p. 29 (SFAFT "is organized to function independently of DAI").

14. Franchise Agreement 5e, f, i.

opened in connection with the parties' contract" " 'arises out of' " or " 'relates to' " the contract containing the arbitration clause).

In Count II, the franchisees allege that eight Subway vendors conspired with the trustees of the SFAFT, DeLuca and Buck, the companies owned and controlled by them—DAI—and the executive director of the SFAFT, to increase the price of their products and then pay a portion of those price increases to the above state court defendants, while retaining a portion of the price increases for themselves as compensation for participating in "the scheme." The franchisees allege that the vendors agreed to participate in this scheme in order to obtain approval to sell their products and supplies to the Subway franchisees and that this scheme results in a "hidden advertising fee" charged to the franchisees above the 2.5% required by their franchise agreements.

It is the Franchise Agreement that requires all products sold by a franchisee to be approved—franchisees may not "sell [ ] any products other than those approved by the company." Franchise Agreement 5(b). DAI approves products for sale in Subway stores and negotiates with vendors the prices of products sold to Subway franchisees. The approved vendors are set forth in the Operations Manual, which is incorporated by reference into the Franchise Agreement. Franchise Agreement 5b, p. 5. The Franchise Agreement assesses the advertising fee, which the franchisees allege in Count II has been increased as a result of this "scheme." Accordingly, the allegations in Count II "arise[ ] out of" and "relate[ ] to" the Franchise Agreement and those claims are subject to arbitration.

### B. *Injunction*

DAI moved to enjoin the Illinois lawsuit in its entirety. The franchisees object to injunctive relief because: (1) DAI will not suffer irreparable harm absent injunctive relief because no claims were brought against DAI; and (2) the Florida franchisee class action plaintiffs, who are not parties to the proceedings in this Court, cannot be enjoined.

Since the issues sought to be litigated by the franchisees fall within the scope of the arbitration clause, they are subject to arbitration and the franchisees must be enjoined from prosecuting the state action in order to effectuate the judgment compelling arbitration. The franchisees cannot avoid this result simply by suing DAI's owners and agents. *Doctor's Associates, Inc. v. Stuart*, 85 F.3d 975, 984–85 (2d Cir.1996) (enjoining state court action against DAI and its owners and agents because such action was "a bald attempt to evade its duty to arbitrate with DAI"); *Kroll v. Doctor's Associates, Inc.*, 3 F.3d 1167, 1171–72 (7th Cir.1993) (court stayed direct claims against co-owners of DAI because the suit "ha[d] no plausible purpose other than to evade its duty to arbitrate its disputes with DAI"). Leaving DAI's name off the complaint, even though DAI is the real party in interest, to avoid arbitration does not preclude arbitration or an injunction enjoining the franchisees from prosecuting the Illinois state action.

The Florida franchisees may also be enjoined from prosecuting the Illinois state action. The reach of an injunction may extend to non-parties. Under Rule 65(d) a court's order granting an injunction is binding on "the parties to the action, their officers, agents, servants, employees, and attorneys, and *upon those persons in active concert or participation with them who receive actual notice of the order....*" Fed.R.Civ.P. 65(d) (emphasis added). The Florida franchisees' status as members and purported representatives of the Madison County class action suit, along with the franchisees with whom DAI petitioned to compel arbitration, constitutes "participation" under Rule 65(d). Accordingly, they may be enjoined from pursuing that class action.

In addition, courts have authority "to bind non-parties to the terms of an injunction or restraining order to preserve its ability to render a judgment in a case over which it has jurisdiction." *U.S. v. Paccione*, 964 F.2d 1269, 1275–76 (2d Cir.1992) (citation omitted). *See also Securities & Exch. Comm'n v. Wencke*, 622 F.2d 1363 (9th Cir.1980). To enjoin all of the class plaintiffs except for the

Florida franchisees, who could then proceed with the Madison County lawsuit, would render the issuance of an injunction in this case a nullity. "Continued litigation of these issues in parallel state proceedings will undermine, if not moot, this ruling." *Doctor's Associates, Inc. v. Distajo*, 870 F.Supp. 34, 36 (D.Conn.1994), *aff'd in part, rev'd in part*, 66 F.3d 438 (2d Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1352, 134 L.Ed.2d 520 (1996). Accordingly, an injunction will enter enjoining the Defendant-franchisees, their agents, attorneys, servants and employees, and all other persons in active concert or participation with them, including the Florida franchisees and any unnamed class action plaintiffs, from prosecuting the state court action pending in the Illinois Circuit Court, Madison County, entitled *David Hollingsworth, et al. v. Joseph Hart, et al.*, Cause No. 96–L–000525, until further order of this Court. No bond will be required in the circumstances in this case.

## III. CONCLUSION

For the foregoing reasons, the following Petitions to Compel Arbitration are GRANTED:

3:96cv1887 *Doctor's Associates v. Hollingsworth* (Doc. # 1)

3:96cv1888 *Doctor's Associates v. Arkis* (Doc. # 1)

3:96cv1890 *Doctor's Associates v. Childers* (Doc. # 1)

3:96cv1891 *Doctor's Associates v. Cooksey* (Doc. # 1)

3:96cv1892 *Doctor's Associates v. Farr* (Doc. # 1)

3:96cv1893 *Doctor's Associates v. Gonzalez* (Doc. # 1)

3:96cv1894 *Doctor's Associates v. Hoder* (Doc. # 1)

3:96cv1895 *Doctor's Associates v. Johal* (Doc. # 1)

3:96cv1896 *Doctor's Associates v. Madgett* (Doc. # 1)

3:96cv1897 *Doctor's Associates v. McCusker* (Doc. # 1)

3:96cv1898 *Doctor's Associates v. Patel* (Doc. # 1)

3:96cv1899 *Doctor's Associates v. Sipiora* (Doc. # 1)

3:96cv1900 *Doctor's Associates v. Spielvogel* (Doc. # 1)

3:96cv1901 *Doctor's Associates v. Weston* (Doc. # 1)

The following motions for injunctive relief are GRANTED:

3:96cv1887 *Doctor's Associates v. Hollingsworth* (Doc. # 3)

3:96cv1888 *Doctor's Associates v. Arkis* (Doc. # 3)

3:96cv1890 *Doctor's Associates v. Childers* (Doc. # 3)

3:96cv1891 *Doctor's Associates v. Cooksey* (Doc. # 3)

3:96cv1892 *Doctor's Associates v. Farr* (Doc. # 3)

3:96cv1893 *Doctor's Associates v. Gonzalez* (Doc. # 3)

3:96cv1894 *Doctor's Associates v. Hoder* (Doc. # 3)

3:96cv1895 *Doctor's Associates v. Johal* (Doc. # 3)

3:96cv1896 *Doctor's Associates v. Madgett* (Doc. # 3)

3:96cv1897 *Doctor's Associates v. McCusker* (Doc. # 3)

3:96cv1898 *Doctor's Associates v. Patel* (Doc. # 3)

3:96cv1899 *Doctor's Associates v. Sipiora* (Doc. # 3)

3:96cv1900 *Doctor's Associates v. Spielvogel* (Doc. # 3)

3:96cv1901 *Doctor's Associates v. Weston* (Doc. # 3)

The following Motions to Dismiss are DENIED:

3:96cv1887 *Doctor's Associates v. Hollingsworth* (Doc. # 7)

3:96cv1888 *Doctor's Associates v. Arkis* (Doc. # 7)

3:96cv1890 *Doctor's Associates v. Childers* (Doc. # 7)

3:96cv1891 *Doctor's Associates v. Cooksey* (Doc. # 9)

3:96cv1892 *Doctor's Associates v. Farr* (Doc. # 9)

3:96cv1893 *Doctor's Associates v. Gonzalez* (Doc. # 7)

3:96cv1894 *Doctor's Associates v. Hoder* (Doc. # 7)

3:96cv1895 *Doctor's Associates v. Johal* (Doc. # 8)

3:96cv1896 *Doctor's Associates v. Madgett* (Doc. # 7)

3:96cv1897 *Doctor's Associates v. McCusker* (Doc. # 9)

3:96cv1898 *Doctor's Associates v. Patel* (Doc. # 7)

3:96cv1899 *Doctor's Associates v. Sipiora* (Doc. # 7)

3:96cv1900 *Doctor's Associates v. Spielvogel* (Doc. # 7)

3:96cv1901 *Doctor's Associates v. Weston* (Doc. # 8)

**SO ORDERED.**